JOHN TOMLINSON'S LESSEE *vs*. JACOB DEVORE.—*Dec.* 1843.

The courts of common law in *Maryland* have jurisdiction in cases involving the rights of lunatics, unless they have been ousted by the act of 1785, ch. 72, and its supplements, which they do not do.

The act of 1785, ch. 72, contains no express ouster of the jurisdiction of the courts of common law, and hence they have concurrent jurisdiction over the rights of lunatics with the Court of Chancery.

To divest courts of general jurisdiction of their jurisdiction, terms to that end must be employed in the statutes intended to accomplish such a purpose, and it cannot be effected, unless by express terms, or by necessary implication.

Upon a judgment, execution and sale, the title to land passes, though the defendant in the judgment was a lunatic at the time of its rendition.

Courts of justice guard and maintain with jealous vigilance the titles of purchasers acquired under judicial sales.

APPEAL from *Allegany* County Court.

This was an action of *Ejectment*, brought on the 5th Oct. 1836, for a tract of land called "*Sampson's Riddle Amended.*" The defendant took defence on his title, and pleaded not guilty.

At the trial of the cause, the parties agreed, "that no objection shall be made to the suit by the defendant's counsel, on the ground that the said *Tomlinson* appeared by attorney, instead of his trustee, but that the said suit shall stand as though said *Tomlinson* appeared by his trustee. The plaintiff, on his part agrees, that if it be a valid objection to said suit, because the same was not brought in the name of the trustee instead of the name of the lunatic, then he will suffer a *non pros.*

The cause was then submitted to the court on the following statement of facts:

The parties, plaintiff and defendant, in this case, agreed to the following facts in the nature of a case stated for the opinion of the court. It is admitted that the land, for the recovery of which this suit is brought, was conveyed by *John Tomlinson, Sen.*, the father of the plaintiff, to the plaintiff, by his deed duly executed, acknowledged, and recorded on the 3rd day of August, 1818. That on the 21st of July, 1821, four judgments were recovered by certain creditors of the said *John Tomlinson*, the plaintiff, against him, before a justice of the peace for said

county; that on the 12th January 1822, two other judgments were recovered by creditors of the said *John Tomlinson*, the plaintiff, against him, before a justice of the peace of said county, and that these judgments being unpaid, were revived by *scire facias* on the same in August 1827; that at the *April* term of *Allegany* county court 1827, a judgment was rendered by said court against the said *John Tomlinson*, for a debt of his, in favor of the creditor and plaintiff in that case; that in October 1827, *fi. fas.* were issued on all said judgments, and placed in the hands of the sheriff of *Allegany* county, who, in virtue thereof, levied them on the land, for the recovery of which this suit is brought, and sold the same at public sale, to the highest bidder, and that *Jacob Devore*, the defendant in this case, became the purchaser thereof, paid the consideration since he bid for the same, to the said sheriff, who, by his deed of bargain and sale, duly executed and acknowledged on the 17th day of February, 1828, conveyed said land to said *Devore*, who took possession of said land; he has ever since, up to this time, continued to hold possession of the same; that on the 12th day of July, 1822, application was made to the *Chancellor of Maryland*, by *John Tomlinson*, *Sen'r*, the father of the plaintiff, for a writ of lunacy to be issued, to enquire of the lunacy of said *John Tomlinson*, *Jun.*; that a writ was accordingly issued, and an inquisition regularly taken and found, and that by that inquisition the said *John Tomlinson* was found to be a lunatic on the 25th day of July, 1822, when the inquisition was taken, and to have been so *for five months* and upwards before that time, which inquisition was returned to the Chancery Court, and upon a petition filed by *John Tomlinson*, *Sen'r*, the father, he was appointed the trustee for the care and custody of the person and estate of the said *John Tomlinson*, *Jun.*, who was so found to be a lunatic.

If, upon the aforegoing statement of facts, the court are of opinion that the judgments at law, *fieri facias*, sale by the sheriff, and conveyance made by him of the land as aforesaid, to the defendant, are sufficient to transfer the title to said land to the defendant, notwithstanding the lunacy of the plaintiff,

as found by the inquisition as aforesaid, that then the verdict is to be entered for the defendant; but if the court shall be of opinion that the said judgments are inoperative and void, because of the lunacy of the said *John Tomlinson, junior*, the plaintiff, as found by said inquisition, as also the *fi. fas.* and sale as aforesaid, that then the verdict of the jury shall be for the plaintiff.

On the aforegoing statement, the court were of opinion, that plaintiff is not entitled to recover, and so instructed the jury. The plaintiff excepted.

The verdict and judgment being against the plaintiff, he appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY and SPENCE, J.

By PRICE for the appellant, and

By McKAIG, McMAHON and F. A. SCHLEY for the appellee.

SPENCE, J., delivered the opinion of this court.

The statement of facts agreed to, and upon which the court below instructed the jury in this case, presents for the revision of this court, a question of great importance and interest.

Questions of jurisdiction in relation to courts must always be important, because they are questions which ascertain the limits of judicial power; and in this case, it is one of peculiar interest, arising from the character of the infirmity of the individual, which, it is insisted, exempts him from the jurisdiction of the courts of law.

The argument of the appellant's counsel conceded that the courts of common law had jurisdiction in *Maryland* in cases involving the rights of lunatics, unless they had been ousted of their jurisdiction by the act of 1785, ch. 72, and the supplements thereto; and had this concession been withholden, the authorities, both in this country and *England*, are conclusive.

The question then is, does the act of 1785, ch. 72, or any supplement thereto, oust the courts of law of jurisdiction in this case? After a careful examination of the act of 1785, ch. 72, we may venture to affirm that there is no language employed, or combination of words used, which can be construed to divest the common law courts of jurisdiction in cases involving the rights of lunatics, or raising even a strong implication of the fact.

The act of 1785, chap. 72, contains no expression of the same signification or import, as that used in the *Statute of New York;* 1 *N. K. Laws,* 147; in relation to which latter statute, *Chancellor Kent* says: "the fit and proper remedy for the creditor of a lunatic, is in this court, and not by an action at law. The commitment, by statute, of the care of the lunatic and his estate, to this court, and the power given to it to sell the real estate, shows that this is the proper tribunal for the creditor to resort to." Had the Chancellor's opinion stopped here, the fair conclusion would be, that the Chancellor had concurrent jurisdiction, under this statute, with the common law courts.

*Chancellor Kent,* in the same case, *Brasher vs. Cortland,* 2 *John. Ch. Ca.* 403, in commenting on the 6th sec. of the same statute, uses the following language: "But this last provision is important in another view, it goes absolutely to interdict the remedy at law, by prohibiting a sale of the real estate under execution." The negative expression in the *Statute of New York,* the Chancellor construes to confer exclusive jurisdiction, and without this provision, the irresistible inference is, that his jurisdiction would be concurrent with the courts of common law. The Act of Assembly of *Maryland* provides, "that the Chancellor shall have full power and authority, in all cases, to superintend, direct and govern the affairs and concerns of persons who are or may be lunatic or idiots, both as to the care of their persons and estate, and may appoint a committee, &c., and that if it will be for the benefit and advantage of the estate of such persons (idiots or lunatics,) to sell a part of the real estate to pay their debts, &c." Thus the 6th sec. of the act

of 1785, is very similar to the *Stat. of New York*, and may, with great fairness, be construed in cases involving the rights and interest of lunatics to confer jurisdiction upon the Court of Chancery in *Maryland;* but as there is no express ouster of the jurisdiction of the courts of common law, we are driven to the conclusion, that they have concurrent jurisdiction with the Court of Chancery.

The doctrine is clearly settled by a long train of concurrent decisions, that to divest courts of general jurisdiction of their jurisdiction, express terms to that end must be employed in the statute, and that it cannot be effected, unless by express terms, or by necessary implication. Vide *Rex vs. Chaseley*, 2 *Bur.* 1040; *Heath & Room*, 2 *Hill's R.* 42—*ex parte.*

The view which we have taken of the question raised upon the first point, reaches, controls and determines all the other questions in this cause. The judgments being good at law, and no objection made to the executions, or sale made under them, in point of form or substance, it follows as a necessary consequence, that the title passed by the sale to the purchaser, and that the court properly instructed the jury to find for the defendant.

We forbear to present either arguments or authorities to prove the jealous vigilance with which courts of justice guard and maintain the titles of purchasers, acquired under judicial sales, as there is no portion of the law, in regard to which the adjudications have gone farther, or are more uniform and conclusive. **JUDGMENT AFFIRMED.**