# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1880.

JOHANN F. M. LOEBER and JOHANNA HERRING *vs.*
JOHN ECKES.

*When a Sale of Mortgaged premises will be set aside on account
of Inadequacy of Price and Injurious Representations by the
Mortgagee.*

Where it appeared from the testimony taken under exceptions to the
ratification of an attorney's sale of mortgaged property under a
power contained in the mortgage, that the property, which sold for
$4550, was worth largely over $6000, and that at least one *bona fide*
bidder, willing, able and anxious to buy, and who would have bid
a much larger sum than that at which the property sold, was kept
away from the sale by the direct agency of the mortgagee's presi-
dent, and in consequence of representations and an agreement
which he made, but which he afterwards failed to carry out, it was
HELD :

That the sale should be vacated and a new one made.

APPEAL from the Circuit Court for Baltimore County, in
Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER,
ALVEY and ROBINSON, J.

*Lewis Hochheimer*, for the appellants.

1                             v. 55.

*R. R. Boarman*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This is a case of exceptions to a sale under a power contained in a mortgage. The mortgage was executed by the appellee to the Permanent Land Company of the City of Baltimore, to secure the sum of $3000. The property mortgaged was twenty acres of land in Baltimore County, on the Trappe Road, about three miles from the city limits, and the improvements consisted mainly of a tavern and out-buildings. The amount due on the mortgage was the principal and a small arrear of interest. The sale was made by the attorney named in the mortgage, at the court-house door in Towsontown. It appears to have been duly advertised in a county newspaper, and it does not appear that any other notice of the sale was given. The property was sold to the appellants for $4550, and exceptions to its ratification were filed by the mortgagor. These exceptions were sustained, the sale set aside, and from the order vacating the sale the purchasers have appealed.

The exceptions mainly relied on, and the only ones we shall notice, are inadequacy of price, that bidders were kept away by the mortagee's agent for the purpose of preventing a fair sale, whereby the property sold for one-half its value, and that the sale was injured by fraudulent means adopted by the mortagee and its agents, other than the attorney who made the sale.

It is well settled that mere inadequacy of price by itself is not sufficient to set aside a sale made by a trustee under a decree in equity, unless it be so gross and inordinate as to indicate want of reasonable judgment and discretion, or misconduct or fraud, in the trustee, or some mistake or unfairness for which the purchaser is responsible. This is the doctrine of all the Maryland authorities, but at the same time they all declare that where it appears there is

Loeber and Herring *vs.* Eckes.

any other just cause to doubt the propriety of the sale, it is a consideration very proper to be viewed in connection with it, that the sale has been made at a reduced price. That was the doctrine announced in *Glenn vs. Clapp*, 11 *G. & J.*, 9 ; and in *Johnson vs. Dorsey*, 7 *Gill*, 294, the leading. case on this subject, the Court say : " It is certainly true that inadequacy of price is to be regarded as a strong auxiliary argument in combination with circumstances calculated to cast doubt or suspicion upon the correctness of the sale." Here the sale was not under a regular decree in equity, but under a power in a mortgage, and was made at the instance and for the benefit of the mortgagee. In such a case what has been thus said in these decisions is peculiarly applicable, and we are clearly of opinion that if it appears there has been anything like fraud or unfairness on the part of the mortgagee or his agents in reference to the sale and calculated to affect it injuriously, that fact, in connection with great inadequacy of price, is good ground for setting it aside.

Now it is shown in this case by a great preponderance of proof that the property was worth largely over $6000. Witnesses living in the immediate neighborhood testify that the land was worth $300 per acre without the improvements. One witness says that two years ago he offered the appellee $6000 for the property, and communicated the fact that he had made this offer, to Friedenwald, *the president of the mortgagee company*, and that he will give that price for it now if he can get it. Another states that in June, 1878, he offered $450 per acre, and was then ready to pay the appellee that price for it, and that it is worth as much as that at the present time. Mrs. Haschert who at the time of the sale and for some years before had rented the tavern or hotel and about eight acres of the land at the yearly rent of $360, payable quarterly, says she offered the appellee $3500 *for the part she occupied*, and told Friedenwald before the sale she would give that for

it. This sum was quite sufficient to pay off the mortgage debt in full and would have left the residue of the land for the mortgagor. But what is more important, it is proved that after the advertisement and before the sale, Friedenwald, the president of the mortgagee, went out to the tavern and told Mrs. Haschert that if any one came to inquire about the property, she must give it a bad name, say it was sickly there, and that it was no business place; that a few days before the sale he asked her if she wanted the place, and she said if it was sold she would like to have it; he then asked her if she wanted the whole or only a part, and she said she wanted the part she occupied with the buildings on it, and he replied it made no difference, that he would buy it all and then let her have the part she wanted; that he then asked her how much she would give for that part, and she replied $3500, the same she had offered Eckes for it; that he then told her she *must not go to the sale*, that he would buy it, that he had the property in his hands and could get it cheaper than she could, that she must hush up and not tell anybody, but must give him something for buying, and she agreed to give him $50; that in consequence of this agreement and what he told her, she *did not go* to the sale; that if this arrangement had not been made *she would have gone* and bid at least as high as $6000 for the property, and that she will now give that much for it, and has the money to pay for it; that she told him at the time the place was worth $7000, and that Wenig had offered Eckes $6000 for it, which sum he would not take. Friedenwald went to the sale and bid but only to the extent of $4500 and did not buy. It thus appears that at least one *bona fide* bidder, willing, able and anxious to buy, and who would have bid a much larger sum than that at which the property sold, was *kept away* from the sale by the *direct agency of the mortgagee's president,* and in consequence of representations and an agreement which he made, but which he afterwards failed to carry out.

In view of these facts we have no hesitation in affirming the order which vacates the sale and directs a new one to be made.

*Order affirmed, and*
*cause remanded.*

