PAUL DIRCKS *vs.* HENRY LOGSDON, Assignee of NATHAN WILSON.

*Exceptions to Mortgagee's Sale—Receipt—Assignment—Effect of payment of a Mortgage by a person not under any Obligation to pay it—Subsequent Assignment to the party making the payment—Inadequacy of price—Sufficiency of notice of Sale under the terms of the Mortgage of the description—Sufficiency of the property—Effect of Mortgagee not taking possession, on Default, before Selling the property, where the Mortgage authorized such taking.*

L. the purchaser at a mortgage sale, two days after the purchase, paid the holder of a prior mortgage on the property, the full amount of principal and interest then due on his mortgage, and *something* was *then* written on the original mortgage which was signed by the mortgagee, and the instrument was then delivered to L. On the same day, this writing was erased at the instance of L., and a formal assignment written on the mortgage, and signed by the mortgagee. The sale under the junior mortgage was afterwards set aside, and L., as assignee of the first mortgage, and under a power contained therein, sold the property, and himself became the purchaser. On exceptions to this sale, filed by the purchaser of the equity of redemption at sheriff's sale, under a judgment against the mortgagor, subsequent to both mortgages, it was HELD:

1st. That the testimony taken touching the nature of the erased writing did not show that it was a release, or that it was anything more than a *receipt* to the effect that the mortgagee had received from L. the full amount of the mortgage debt.

2nd. That such a *receipt* was mere evidence of the payment of the money, and had no other force or effect.

3rd. That if the payment of the money operated a discharge or extinguishment of the lien of the mortgage, the subsequent assignment, whether made on the same day or afterwards, could not avail against the exceptant who was then the owner of the equity of redemption; and if it did not so operate, the assignment was clearly valid.

4th. That as a general rule, payment of an incumbrance by a party whose *duty* or *obligation* it is, by contract or otherwise, to pay, extinguishes it, but whether this effect follows in other cases depends upon the intention of the parties; and as to the question of intent in such cases, the *interest* of the party making the payment has a strong, if not controlling influence.

5th. That L. not being a party to the mortgage was under no duty or obligation to have it paid or cancelled, and he having testified that his intention when he paid the money was to obtain an assignment of the mortgage and not to have it extinguished as a lien upon the land, and such being manifestly his *interest* at the time he made the payment, (the sale to him not having been ratified,) it did not under the circumstances of the case, amount to a discharge of the mortgage, but entitled L. to the assignment he subsequently obtained.

6th. That the evidence to show inadequacy of price was not such as to justify the sale being set aside on that ground.

The mortgage under which the sale by L. was made, provided that the sale might be made after giving twenty days notice by handbills *or otherwise*, of the time, place and manner of sale on the terms prescribed in said notice. Notice was given by advertisement in a daily newspaper in the City of Cumberland, the land being situate a mile and a half from that city. HELD:

That this was a sufficient compliance with the terms of the mortgage even though no notice was given by handbills.

The notice stated the day, hour, and place of sale, and prescribed the terms as "cash on the day of sale," and described the land by quantity, distance and direction from the City of Cumberland, with a reference to a recorded deed containing a description by metes and bounds, courses and distances. HELD:

1st. That in all this the requirements of the mortgage were followed and gratified, and the description given of the property was sufficient.

2nd. That it was no objection to the validity of the sale that L. failed to avail himself of a clause in the mortgage, allowing the mortgagee and his assigns on default being made, "to take possession of the premises" before proceeding to sell.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court. ·

The cause was argued before MILLER, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Benjamin A. Richmond,* and *William Brace,* for the appellant.

*William M. Price,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order overruling exceptions to, and ratifying, a sale made under a power in a mortgage. It appears that on the 26th of March, 1874, John B. Smissing mortgaged sixty acres of land near Cumberland, to Nathan Wilson, to secure a debt of $850. The appellee, Henry Logsdon, claiming to be assignee of this mortgage under an assignment from Wilson, dated the 29th of May, 1879, sold the land on the 5th of February, 1881, and purchased the same himself for $775. Smissing had executed a subsequent mortgage of this, and other parcels of land, to Humbird to secure the sum of $1400, and at the sale under this mortgage, which took place on the 27th of May, 1879, Logsdon also became the purchaser, but this sale was afterwards, on exceptions thereto, set aside. Paul Dircks, the appellant, had purchased for $25 the equity of redemption in all the property, on the 7th of September, 1878, at sheriff's sale, under a judgment against Smissing, subsequent to both mortgages. These facts are gathered from the record and the admissions of counsel on both sides at bar. The exceptions to the present sale, several in number, were filed by Dircks.

1st. The *first,* and the one mainly relied on in argument, is to the effect that Logsdon was not the *assignee* of the mortgage, but that the same was *discharged* by his payment in full, to Wilson, of the mortgage debt, *before*

the pretended assignment was executed. It appears, that on the 29th of May, 1879, two days after he became the purchaser of the property at the sale under the Humbird mortgage, Logsdon went to Wilson to get his prior mortgage on this portion of the land. He paid to Wilson $630, the full amount, principal and interest, then due on the mortgage, and *something* was *then* written on the original mortgage which was signed by Wilson, and the instrument was then delivered to Logsdon. The latter in his testimony states that after what was thus written and signed, and which he calls an "assignment," he took the mortgage to Mr. Widener to see if it was in legal form, and Widener said it was not, that it was not under seal and would not do ; that witness then asked him if he could correct it, and he said he could, and did so by scratching out what was there written, and writing the formal assignment as it now appears on the paper ; that witness then, on the same day, took the mortgage again to Wilson; told him what had been done, and Wilson then signed the formal assignment. Widener says he wrote the assignment but has no recollection as to the erasure. The original instrument has been submitted to us for inspection, and while it is evident there has been an erasure we yet find it impossible to ascertain what the writing thus erased actually was. We are satisfied however, not only from the testimony of Logsdon, but also from that of Miss Ellen Feaga, who was present at the time, that it was not a formal *release* of the mortgage. The most that can be made out of her testimony is that her grandfather, Wilson, when the money was paid to him, signed a *receipt* upon the mortgage to the effect that he had received from Logsdon the full amount of the mortgage debt. This is most probably what actually occurred, and it is the most favorable view of the case, for the appellant, that the testimony and the paper itself will warrant us in taking. Such a *receipt* is mere evidence of the payment of the money and has no

Dircks *vs.* Logsdon.

·other force or effect. The question then is did the payment of this money, under the circumstances of the case, ·operate a discharge, or extinguishment of the lien of the mortgage ? If it did, the subsequent assignment, whether made on the same day or afterwards, cannot avail against Dircks, who was then the owner of the equity of redemption, and if it did not, the assignment is clearly valid. As a general rule payment of an incumbrance by a party whose *duty* or *obligation* it is, by contract or otherwise, to pay, extinguishes it, but whether this effect follows in ·other cases depends upon the intention of the parties, and as to the question of intent in such cases the *interest* of the party making the payment has a strong, if not controlling influence. *Walker vs. Stone*, 20 *Md.*, 195; *Brawner vs. Watkins, et al.*, 28 *Md.*, 217 ; *Brown vs. Lapham*, 3 *Cush.*, 551. In *Walker vs. Stone* this Court adopted the opinion of the Judge of the Circuit Court who said: "It is settled in numerous cases that a payment made to a mortgagee by a third party who is under no obligation by contract to pay the debt, will not operate as a satisfaction of it, unless it be manifestly the intention or interest of the party making the payment that it should so operate." Now in this case Logsdon was no party to the mortgage, ·and was under no duty or obligation to have it paid, and ·cancelled. It is also clear from his testimony that his intention when he paid the money, was to obtain an assignment ·of the mortgage and not to have it extinguished as a lien upon the land. Such also was manifestly his *interest* at the time he made the payment. It is true he had just purchased at the sale under the Humbird mortgage, and if his title had been perfected by a ratification of that sale, it would have made no difference to him whether he obtained an ·assignment or a release of this prior incumbrance. But that sale was liable to be set aside by the ·Court, and it is fair to presume that he knew that his title under it depended upon its being ratified. *Code, Art.* 64,

*secs.* 9, 10.   It would have been sheer folly for him to have risked the loss of his money on such a contingency, when he could have secured absolute protection simply by taking an assignment of the mortgage.   We are therefore of opinion the payment of the money, under the circumstances of this case, did not amount to a discharge of the mortgage, but entitled the appellee to the assignment which he subsequently obtained.

2nd.  The next exception is founded on inadequacy of price.   The law is too well settled in this State to admit of discussion that such a sale cannot be set aside for *mere inadequacy of price,* unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale for which the purchaser is responsible, or misconduct or fraud in the trustee or party selling.   *Johnson vs. Dorsey,* 7 *Gill,* 200; *Loeber & Herring vs. Eckes,* 55 *Md.,* 1.   On the part of the exceptant four witnesses were examined on this subject, and of these, two say, that in their opinion, the land is worth $1800, and the other two say it is worth $1500, but not one of them, (though they were all asked the question,) says he was ready and willing to buy the land, or to bid for it on a re-sale.   The appellant testified that the land was worth $1800, while the appellee says he thinks it ought to bring $1200 or $1300.   In view of this testimony, and what has been decided in the numerous Maryland decisions upon this subject, we are unable to say there is any such inadequacy of price made out as to justify us in vacating the sale upon that ground alone.

3rd.  But the same authorities declare that where it appears that there is any other just cause to doubt the propriety of the sale, it is a consideration proper to be viewed in connection with it, that the sale has been made at a reduced price.   In this case, however, we are constrained to say we find no ground whatever to doubt the fairness of the sale.   The appellee became the purchaser at his own sale, but the law gives him this right, and declares

that his title shall not, for that reason, "be questioned, impeached, or defeated either at law or in equity." *Code, Art.* 64, *sec.* 13. The mortgage provides that the sale may be made "after giving twenty days notice by handbills, *or otherwise,* of the time, place, and manner of sale on the terms prescribed in said notice." The appellee gave notice by advertising the property, once a week for three successive weeks, before the day of sale, in the "Cumberland Daily Times," a newspaper published in the City of Cumberland. This we think a sufficient compliance with the terms of the mortgage, even though no notice was given by handbills. The mortgage says the notice shall be by handbills or in some other way, but does not require both. The land was situated only a mile and a half from Cumberland, and it seems to us that notice of the sale by advertisement in a daily newspaper published in that city was not only reasonable and proper, but more likely to reach the public than notice by handbills. The advertisement also fixed "the 5th of February next, at 10 o'clock, a. m." as the *time,* and "in front of the auction room of William Wichard, in the city of Cumberland," as the *place* of sale ; and prescribed the *terms* as "cash on the day of sale." In all this the requirements of the mortgage are followed and gratified. There were no improvements on the property, and it is described in the advertisement as "all that piece or parcel of land containing sixty acres more or less, and lying about one and a half miles east of Cumberland, which is fully described in a deed from Nathan Wilson to the said John B. Smissing, bearing date the 26th day of March, 1874, and recorded in Liber T. L., No. 42, folio 611, one of the land records of said county ;" and in the deed thus referred to the metes and bounds, courses and distances are given. In our opinion this is a sufficient description of the property. *Stevens vs. Bond, et al.,* 44 *Md.,* 506. There is no proof of any misrepresentations, or misconduct on the part of the appellee at the sale,

which appears to have been reasonably well attended. There was, at least, one other bidder for the property besides the appellee, and we have his affidavit to his report of the sale, that the same was fairly made. The mortgage allowed the mortgagee and his assigns, on default being made, "to take possession of the premises," before proceeding to sell, but it is no objection to the sale that the appellee failed to avail himself of this privilege.

These views dispose of all the exceptions taken by the appellant, and it follows that the sale must be sustained, and the order appealed from affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 15th of December, 1882.)