HENRY SHIRK, Individually and as Administrator,

*vs.*

MORRIS A. SOPER et al., Trustees, et al.

*Judicial Sales—Contract by Trustees—Inadequacy of Price—
Appeal from Ratification—Effect of Reversal—Bond
on Appeal—Discretion of Court.*

Where trustees were authorized to make a private sale only upon "due proof and approval by the court, upon such terms as the court shall approve," their power of sale was conditional only, and on exceptions to the ratification of a contract of sale made by them, the question before the court was, not whether it should set aside a sale actually made, but whether it should approve a proposed sale, and consequently the court, in dealing with the propriety of the sale, was not affected by presumptions in its favor.                                             pp. 275, 276

In the case of private sales, slight inadequacy of price and reasonable expectation of a better price are sometimes sufficient to justify the setting aside of the sale, where the approval of a court is necessary, or where it is invoked, while in the case of public sales, the inadequacy of price must be gross, and the prospect of a better price practically demonstrable, or the circumstances such as to indicate the absence of fair competition.
                                             pp. 276, 277

Before ratifying a private sale by trustees, made under a decree authorizing such a sale upon due proof and approval by the court, the court should be satisfied, from a consideration of all the facts and circumstances, that the price offered is reasonably adequate, and the best likely to be obtained by reasonable diligence on the part of the trustees.          pp. 277, 278

On exceptions to the ratification of a contract for the sale of certain land by trustees, it appearing from actual sales of adjoining land, and from the testimony of practical quarry men familiar with the property, that its greatest value lay in a de-

posit of stone, and its availability for quarry purposes, and it further appearing that no effort was made to sell it as quarry property, and that it was not offered or advertised as such, although parts of the same tract had been previously sold for quarry purposes at prices two or three times that named in the contract, *held* that the proposed sale should not be approved.

pp. 278-282

The arbitrary opinions of two real estate experts as to the value of property cannot balance such tangible, concrete and substantial facts, as the physical characteristics of the property, and the prices at which parts of the same tract have from time to time been sold.                                    p. 282

Under Code, art. 5, secs. 26, 29, the right of appeal from any final decree of a court of equity does not depend on the filing of an appeal bond, the only purpose and effect of such bond being to stay execution.                                    p. 283

Since Code, art. 5, sec. 29, providing that no appeal from a decree shall stay execution unless a bond is given, also provides that the court where the proceedings are pending may in its discretion order that the decree shall not be stayed by the appeal, or shall only be stayed on such terms as the court may direct, such court, while under the duty of fixing the amount of the bond, has a discretion as to the amount of the penalty, such discretion to be exercised with reference to the exigencies and circumstances of the case, and not to the necessities or the financial condition of the parties.                        p. 283

The lower court acted within its discretion in informing appellant that it was willing to fix the penalty in the appeal bond at a named amount, but only on condition that the decree or order should not be stayed by the appeal, and, upon the appellant's refusal to consent to such condition, in refusing to fix any penalty for the bond.                              p. 284

The rights of a purchaser at a judicial sale are not affected by a reversal of the decree ratifying the sale, unless an approved bond is filed, and the court passing the decree may in its discretion order that the appeal shall not stay the execution of it, in which case a reversal will not affect the rights of the pur-

chaser, whether a bond is filed or not. The discretion thus reposed in the court is absolute, arbitrary and cannot be reviewed on appeal. pp. 284-288

*Decided December 6th, 1923.*

Appeals from the Circuit Court of Baltimore City (DUFFY, J.).

Exceptions by Henry Shirk, individually, and as administrator and heir at law of Isaac H. Shirk, deceased, to the ratification of a sale made by Morris A. Soper and the Security Storage and Trust Company, trustees, to the American Woodworking Company. From an order ratifying said sale, and from an order refusing to fix the amount of an appeal bond except on condition that the appeal should not stay the order of ratification, said exceptant appeals. Order of ratification reversed, and appeal from order as to appeal bond dismissed.

The causes were argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Richard B. Tippett,* with whom were *Henry Shirk, James W. Bowers* and *Richard B. Tippett & Sons* on the brief, for the appellant.

*Clarence K. Bowie,* with whom were *Bowie & Clark* on the brief, for the trustees.

*Chester F. Morrow,* with whom were *Niles, Wolff, Barton & Morrow* on the brief, for the purchaser.

OFFUTT, J., delivered the opinion of the Court.

Henry Shirk, then residing in Baltimore City, died on or about June 18th, 1891, leaving a last will and testament which in due course was probated in the Orphans' Court of

Baltimore City Under that will the residuum of his estate was devised and bequeathed to his daughter and his grandsons in the following proportions: To Susan Hiss, his daughter, one undivided one-half interest, to his two grandsons, Isaac Shirk and Henry Shirk, the other undivided one-half interest.

At the time of his death he was seised and possessed of a tract of land containing a little less than eight acres, which was bounded in part by the right of way of the Hampden and Lake Roland Railroad Company, and Prospect Avenue, and touched at one point Huntington Avenue, and which was included in the residuum of the estate. It was contiguous to the right of way and tracks of the Maryland and Pennsylvania Railroad, which appears to separate it from the Falls Road, and to the right of way and tracks of the Baltimore and Ohio Railroad, and for many years a part of it has been operated as a quarry It is said to be underlaid to the depth of two hundred or more feet with a deposit of gneiss, a stone easily worked, durable, and suitable for the construction of all kinds of buildings, and the whole tract is peculiarly adapted for development as a quarry property.

On April 4th, 1893, the owner of this tract sold about six-tenths of an acre of it for $14,000 to John G. Schwind, who for some years operated it as a quarry.

On June 27th, 1899, Susan P. Hiss and P. Hanson Hiss, her husband, filed in the Circuit Court of Baltimore City a bill of complaint against Henry and Isaac Shirk, for the purpose of having the property sold, on the ground that it was not partible in kind without loss to the owners thereof. The pleadings were perfected, testimony taken and filed, the case submitted and the court, on May 24th, 1900, passed a decree for the sale of the property, and appointed W. Starr Gephart and William A. Fisher trustees to make the sale. The trustees were authorized to sell at public sale, or, at private sale, "upon due proof and approval by the court, upon such terms as the court shall approve."

Nothing further was done until April 18th, 1904, when the Security Storage and Trust Company, which had succeeded Mr. Fisher as one of the trustees, filed a report and petition showing the proposed sale of two and a quarter acres of the property to John G. Schwind at $10,000 an acre. W. Starr Gephart, the other trustee, did not join in the report because he did not believe the consideration adequate, but he did file an answer to the report and petition filed by the Security Storage and Trust Company, in which he protested against the proposed sale on that ground, and also because the sale of the property would lessen the value of the unsold remainder of the whole tract. Testimony was taken in connection with the issues thus made and, on May 29th, 1905, the court passed an order dismissing the petition.

On December 8th, 1909, both the trust company and Gephart joined in reporting a sale of 1.089 acres of the same property to John G. Schwind at $15,000 an acre, and on January 26th, 1910, that sale was finally ratified and confirmed.

On January 7th, 1922, Hon. Morris A. Soper, who had succeeded W. Starr Gephart as trustee of the estate, and the Security Storage and Trust Company, the other trustee, reported to the court a sale to the Falls Road Quarry, Incorporated, of the stone underlying a part (340 x 220 feet) of the property at twenty cents a ton for all stone quarried. The agreement of sale referred to in the report provided that the vendee should, accounting from the 1st day of November, 1921, quarry during each year not less than 15,000 tons of stone. No cause to the contrary having been shown, that sale was also ratified and confirmed, on February 9th, 1922.

On December 16th, 1922, the trustees reported a sale of two and seven-tenths acres of the remaining property to the American Woodworking Corporation, for $13,500, and on January 17th, 1923, Henry Shirk, in his own right and as administrator and heir at law of Isaac Shirk, excepted to the ratification of that sale on the ground that the selling price was inadequate.

Those exceptions were in ordinary course set down for a hearing, and testimony in connection with them taken in open court. At the conclusion of the testimony, and after counsel for the parties had been heard, the court finally ratified that sale, and it is from that order that the first appeal shown by the record before us was taken. It was taken on March 28th, 1923, and on June 26th, 1923, Henry Shirk, the appellant, filed a petition in which, among other things, he charged that on March 29th, the day following his appeal, the trustees had conveyed the property described in the report of sale to the American Woodworking Corporation. He further averred that he was a man of limited means, and unable to supply a bond in a large amount, but that he could give an appeal bond to stay the execution of the decree in an amount sufficient to cover any costs which were likely to accrue, which under the circumstances of the case he said was all that was requisite. Upon that petition the court passed the following order:

"On the aforegoing petition and affidavit, it is hereby certified that the Circuit Court of Baltimore City is willing to fix the amount of the appeal bond in the aforegoing case at one thousand dollars ($1,000), and to instruct the clerk to accept a proper bond in said amount conditioned to prosecute said appeal with effect; but, said Circuit Court of Baltimore City is willing only to fix the amount of said bond under condition that pursuant to article 5, section 29 of the Code of Public General Laws of Maryland, the decree or order appealed from in this case shall not be stayed by such appeal; and it is further certified that this Court has communicated said condition above set forth to the appellant herein, and he is unwilling to have the amount of the bond so fixed under the condition above set forth; wherefore, this Court declines to fix the amount of said bond.

"Done this 26th day of June, 1923."

From that order the second appeal was taken.

The only question presented by the first appeal is, whether the sale made by the trustees to the American Woodworking Corporation should have been ratified. In dealing with that question we are not precisely in the position we would occupy had the decree in this case been in the usual form, authorizing the trustees to sell at public or private sale and requiring them to report their sale to the court after it had been made, for in this case the trustees, by the plain and clear language of the decree, were not authorized to make a private sale except upon "due proof and approval by the court, upon such terms as the court shall approve." The record in this case indicates that the sale under consideration was a private sale, made without the knowledge or approval of the court, and that at the time the contract was made no proof concerning it had been submitted to the court which was later called upon to ratify it  The power to sell at private sale, conferred by the decree upon the trustees, was not an absolute power, but a conditional power, and as the right of the trustees to sell at all was necessarily derived from the decree, they had no power to sell until they had complied with the conditions prescribed by it as essential to the exercise of that power. The question before the lower court therefore was, not whether it should set aside a sale that had actually been made, but whether it should approve a proposed sale. And the rule laid down in such cases as *Warfield* v. *Ross*, 38 Md. 85, cited by the appellee, that mere inadequacy of price standing alone "is insufficient to authorize an interference with a sale unless it is so inordinate as to indicate some mistake or unfairness for which the purchaser is responsible, or misconduct or fraud in the trustee to whom the management of the sale had been committed," is not applicable, for the reason that in this case no sale had been made, since by the terms of the decree no sale could have been made without the approval of the court after "due proof" had been submitted to it that the sale proposed was fair and for an adequate consideration  So that in dealing with the propriety of the sale

proposed by the trustees upon the terms set out in their agreement with the American Woodworking Corporation, the court was not affected by any of those presumptions in favor of it, which are enumerated in the case of *Wicks* v. *Westcott*, 59 Md. 276, where it is said: "Ordinarily, the presumptions are that the trustee did his whole duty, and that a sale made at public auction, after due notice, has brought the best price; but when facts are found to exist, calculated to prejudice the sale, the presumption is against the sale. In such cases a court of equity will sometimes ratify a sale, when strict conformity to requirements has not been observed in making it, but such ratification will not be accorded unless it appears from the proof, that the sale is an advantageous one, and ought to be ratified notwithstanding the infirmity in the methods of proceeding. In such case the court will infer depreciated price from much lighter evidence than would otherwise be required," to the same degree that it would have been had the sale been made in strict conformity with the terms of the decree.

The courts have used a variety of expressions in stating the rule that a judicial sale made by trustees in accordance with the terms of the decree appointing them will not, in the absence of circumstances showing a grave dereliction of duty on their part, be set aside for mere inadequacy of price, unless the inadequacy is so glaring as to afford intrinsic evidence of misconduct, unfairness, mistake or fraud on the part of the trustees in making the sale, but all the essential elements of the rule are fully and clearly stated in the case of *Boyd* v. *Smith*, 127 Md. 364, in which the Court, speaking through JUDGE PATTISON, said: "The law is well settled in this State by a long line of decisions that mere inadequacy of price, standing alone, is not sufficient to vacate a sale, unless it is so gross and inordinate as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct or fraud on the part of the trustee making the sale. *Glenn* v. *Clapp*, 11 G. & J. 1; *Cohen* v. *Wagner*, 6 Gill, 236; *Johnson* v. *Dorsey*, 7 Gill, 269; *Gibbs* v. *Cunning-*

*ham,* 1 Md. Ch. 44; *Hintze* v. *Stingel,* 1 Md. Ch. 284; *House*
v. *Walker,* 4 Md. Ch. 63; *Hubbard* v. *Jarrell,* 23 Md. 66;
*Warfield* v. *Ross,* 38 Md. 85; *Horsey* v. *Hough,* 38 Md. 137;
*Gould* v. *Chappell,* 42 Md. 467; *Bank of Commerce* v. *Lana-
han, Trustee,* 45 Md. 396; *Mahoney* v. *Mackubin, Trustee,*
52 Md. 357; *Loeber* v. *Eckes,* 55 Md. 1; *Dircks* v. *Logsdon,*
59 Md. 173; *Chilton* v. *Brooks,* 69 Md. 584; *Condon* v. *May-
nard,* 71 Md. 601; *Harritee* v. *Poplein,* 73 Md. 322; *Shaw* v.
*Smith,* 107 Md. 523; *Hunter* v. *Highland Land Co.,* 123
Md. 644."

The general rule as stated by the court in that case is
however subject to this qualification, that the "inadequacy"
of price necessary to justify such an inference cannot be sepa-
rated from the circumstances under which it was offered, and
what might be regarded as an "inadequacy" sufficient to war-
rant the court in refusing to ratify a private sale could be
regarded as wholly insufficient to justify it in refusing to
disturb a sale for the same price, made at public auction
after full notice and in such a manner as would naturally
and probably result in obtaining the best price for the prop-
erty, and that qualification is stated in *Weinstein* v. *Boyd,*
136 Md. 234, in which the Court, through JUDGE ADKINS,
said: "The principles by which courts are governed in deal-
ing with private sales are very different from those controll-
ing in public sales. In the one case, slight inadequacy and
reasonable expectation of a better price are sometimes suffi-
cient to justify the setting aside of sales where the approval
of a court is necessary, or where it is invoked, while in the
other, the inadequacy must be gross, and the prospect of a
better price practically demonstrable, or the circumstances
such as to indicate the absence of fair competition. *Kelso*
v. *Jessop,* 59 Md. 114; *South Balto. Co.* v. *Kirby,* 89 Md.
52; *Mason* v. *Hubner,* 104 Md. 554."

For reasons already stated we do not think that either the
general rule, or the rule as qualified in *Weinstein* v. *Boyd,*
136 Md. 234, is strictly applicable here, but in our opinion
the lower court, before ratifying the sale, should have been

satisfied, from a consideration of all the facts and circumstances of the case, that the price offered was reasonably adequate, and the best likely to be obtained by the exercise of reasonable diligence on the part of the trustees.

Coming now to the facts of the case and the evidence relating to them, we will first refer to those about which there is no dispute, and which must be regarded as established. From them it appears that the whole property in question is underlaid by a valuable deposit of stone well suited for building purposes, that quarries for removing that stone have been operated on it for many years, and that there is a nearby market for all the stone that can by any reasonable development of the property be taken from it, and that at present the facilities for removing the stone from the quarries and transporting it to its natural market are sufficient. It further appears that from the first sale of any part of this tract referred to in the record, that made by Henry Shirk, the grandfather of the appellant, to John G. Schwind, in 1893, to the last sale, which was made by the present trustees to the Falls Road Quarry, Incorporated, in 1922, every parcel sold from it has been sold for quarrying purposes, and that the prices realized at those sales ranged from approximately $20,000 an acre to $15,000 an acre, where the tracts were sold in fee simple, and that, in the single instance where the stone alone was sold upon a royalty basis, that the annual income from a parcel of it fronting 340 feet on the property of the Maryland and Pennsylvania Railroad Company with a depth of 220 feet has produced an annual revenue of over $3,000, and may produce an annual revenue as great as $10,000.

On the other hand it appears that, while the stone from the quarries now operated on the property is removed across the Maryland and Pennsylvania Railroad Company's property, the right to so remove it can be terminated at any time by the railroad company, and that at most the estate has no more than a mere revocable license terminable upon thirty days' notice by that company, and that if the railroad com-

pany elects to terminate it, there would be no practicable way
of removing stone quarried on the property without the ex-
penditure of a large sum of money to install cable ways.

The land and the stone underlying it are described in some
detail by Daniel J. Hauer, a witness for the exceptant, and
an engineer with thirty years' experience in the quarry and
construction business. In the course of his testimony for the
exceptant he gave the following description of the land and
the stone underlying it: "It is a gneiss rock, which is a
grade of rock that very nearly equals granite, which is con-
sidered the best construction rock for any structures. This
rock is very easily quarried. It lies approximately north to
sixty-five feet above the present quarry floor, which is about
a level with the Maryland and Pennsylvania Railroad tracks.
It has an overburden varying from possibly ten to twenty-
five feet of dirt over it. It has every indication from inves-
tigation of extending a great many feet below the present
quarry floor. I would say possibly one hundred or two hun-
dred feet. * * * In addition to that this stone is very easily
worked to get it out in a quarry. It is very seamy. It is
easily drilled and easily broken up, and yet it is a stone of
hard texture and will stand a great deal of wear. It is very
easily hammer dressed. It is the only stone in the immediate
vicinity of the city that can be easily hammer dressed. That
means a great deal in the way of building, because ordinarily
most hard stone must be tool dressed, which means extra work
by hand or machine, but you can take a hammer with this
stone and not only break it up but shape it up so as to make
masonry of a kind that is used very extensively in building
construction around Baltimore. * * * It can be dressed fairly
well, but the great mass of work that is done here is rough
work, like in our churches and public buildings, round
houses, and a great deal of stone of that character is used
for foundations of buildings and in that the work is simply
dressed, so that this stone takes very good dressing. That
has been done in the past, having gotten out a large amount

of curbing, which is dressing work, that is six inches or more from the top. * * * The greatest value that it has at the present time is the fact that it is easily hammer dressed and is accessible to the centre of the city, more so than any other quarry for furnishing stone of that kind. They used to crush this stone some years ago in some of the quarries there, but it is not being crushed now, but it makes a good grade of crushed stone. * * * There is no quarry closer than Port Deposit with the exception that there are some quarries in Howard County that may be a little closer than Port Deposit that have very good granite, but outside of those two there is nothing within ten or fifteen miles of the city that equals this stone, that is for building purposes and structural purposes."

The evidence relating to the value of the property is drawn from three sources, first that given by previous sales of the same property, second, the testimony of men engaged in the quarrying business, and third, the testimony of real estate experts.

Ernest H. Schmidt, president of the Falls Road Quarry, Incorporated, the company to which the trustees sold the stone underlying a part of the property, testified that his company expected to pay the trustees from eight to ten thousand dollars a year in royalties on stone which it would quarry from the property in the then current year, and he further said that his company would guarantee a minimum rental of $6,000 a year if the trustees would lease to it the whole remainder of the tract, although in connection with that statement he said that only $3,000 of the $50,000 capital stock of the company had been paid in, and he thought that $15,000 an acre for the unsold part of the tract was "out of all reason." Daniel A. Leonard, a practical stone and quarry man, who dealt to some extent in real estate, and was familiar with the property from boyhood, testified that he thought it was worth $15,000 an acre. John H. Butler, a real estate broker in the employ of the Public Improvements Association of Baltimore City, testified that in his opinion it was worth from $9,500 to $10,000 an acre.

J. Carey Martien and Thomas J. Lindsay, recognized real estate experts of wide experience and high standing, witnesses on behalf of the respondents, both valued the property at $5,000 an acre, which they considered its fair market value. In arriving at that valuation they did not consider specially its value as a quarry, but its value for any purpose for which it might be utilized. Judge Soper, one of the trustees, in his testimony went very fully into the efforts made by the trustees to effect an advantageous sale of the property, which finally culminated in the offer made by the American Woodworking Company, and said that he only accepted that offer after he had been advised by two competent and experienced real estate brokers that it represented the fair value of the property. He said that he had discussed with Mr. Schmidt the question of leasing to him for a long period the quarry which the Falls Road Quarry, Incorporated, now operates, but that the negotiations came to nothing, because of the limited capital of Mr. Schmidt's company, but that he did not recall any offer to lease the whole property. James H. Alexander, a practical quarryman, testified that he sold a "worked out" tract of quarry property in the neighborhood of the property in question, containing "between an acre and a half," for $3,500.

This was substantially all the evidence in the case which is material to the question before us. Reduced to its lowest terms the opinion evidence as to value amounts to this: Two real estate experts say the property is worth $5,000 an acre, one real estate expert says that it is worth from $9,500 to $10,000 an acre, and one practical quarryman, with some experience in the real estate business, says that it is worth $15,000 an acre. If this were all the evidence in the case, we should not hesitate, in view of the care and diligence shown by the trustees, to affirm the decree appealed from, but it is not. From actual sales, and from the testimony of practical quarry and stone men familiar with the property, it is sufficiently shown that the greatest value which this property has lies in the deposit of stone underlying it, and its

availability for quarrying purposes. And while in our opin-
ion its general market value, without reference to the special
value given it by the deposit of stone, may not be greater
than that fixed by the experts for the purchaser, and for
which the trustees propose to sell.it, nevertheless the deposit
of stone does give it a special value, and the trustees, before
selling it, were bound to exercise all reasonable diligence to
ascertain whether there was not a market for property of
that special and peculiar character, in which it would bring a
better price than in the general market. This conclusion is
strengthened by the consideration that one of these trustees,
the Security Storage and Trust Company, in 1904 reported a
sale of a part of this property for ten thousand dollars an
acre, which the court refused to ratify, and that in 1909 it
reported a sale of the same property at $15,000 an acre. It is
established that no special effort was made to sell the property
as quarry property; that it was not offered or advertised for
sale as quarry property, although parts of it had been sold
for quarrying purposes at prices two or three times as great
as that for which it is now proposed to sell it. In view of
these facts, it cannot be said that the price for which the
trustees now propose to sell it is a fair or a reasonable or an
adequate price, and in our opinion the sale to the American
Woodworking Corporation should not have been approved
and the exceptions to it should have been sustained. The
mere arbitrary opinions of two real estate experts, no matter
what their standing or experience may be, has too little
weight to balance such tangible, concrete and substantial
facts, for at best the opinion of the expert is conjecture based
on reason and experience and knowledge, but still conjecture,
whilst the physical characteristics of the property, and the
prices at which parts of it have from time to time been sold,
are matters of established fact. And for that reason a sale
of the property in question here, for one-third of the price per
acre paid at any previous sale for parts of the same tract no
more valuable or desirable than this, should not be approved

unless the court is satisfied by competent proof that every reasonable effort has been made to obtain a better price.

This brings us to the question presented by the second appeal.

As stated above, the decree in this case was filed on February 8th, 1923, and the order for appeal on March 28th, and on June 26th the appellant filed a petition asking the court to fix the penalty of the appeal bond, and requesting it to limit the penalty of the bond to a nominal sum, merely sufficient to cover the cost of the appellee's brief and court costs. Upon that petition the court filed a memorandum stating that it "was willing" to fix the amount of the bond at $1,000 but only on the condition that it should not stay the decree appealed from.

By section 26, article 5, Code Pub. Gen. Laws of Md., an appeal is allowed from any final decree passed by a court of equity. The right thus conferred is unconditional and does not depend upon the filing of an appeal bond. *Baltimore* v. *B. & O. R. R. Co.,* 21 Md. 88, 92; *Price* v. *Thomas,* 4 Md. 514. And the only purpose and effect of such a bond is to stay execution. *Ibid.* If the appellant desires to stay the execution of the decree or order appealed from, he must give an appeal bond conditioned to indemnify the appellee against any loss or injury which he may sustain by reason of the appeal and the stay of the execution or operation of such decree or order in such penalty as the court may fix. Code Pub. Gen. Laws of Md., article 5, section 29. But the court may in its discretion order that the decree shall not be stayed by the appeal or shall only be stayed upon such terms as the court may direct. *Ibid.* The effect of the statute last quoted is to impose upon the court, passing the decree or order appealed from, the duty of fixing the amount of the appeal bond, when thereto requested by the party appellant. But while the duty of fixing the penalty of the bond is an absolute duty, the amount of the penalty is within the discretion of the court, and that discretion must be exercised with reference to the exigencies and circumstances of the case, and not

to the necessities or the financial condition of the parties. The petition addressed to the court in this case, with reference to an appeal bond, was not a direct request to fix the penalty of the bond, but a request to fix a merely nominal penalty, and the court was clearly right in refusing to have its discretion hampered by any such limitation. There is nothing in the record to show that the court refused to fix the penalty of the appeal bond, for the memorandum referred to certainly has no such effect, since it stated that the penalty of the bond would be fixed at one thousand dollars. It is true that it made its consent to fix the penalty depend upon the condition that the decree should not be stayed by the appeal, but in annexing that condition to its consent to fix the penalty of the bond, it merely exercised the discretion reposed in it by the statute. That is, its action in effect was to notify the appellant that if he wanted to file an appeal bond, it would fix the penalty at one thousand dollars, but it would not permit a bond in that or in any penalty to stay the operation of the decree. It could indeed have fixed the penalty of the bond and then in a separate order have stated that this was not in its judgment a proper case for staying the operation of the decree and that would have been the ordinary and regular procedure, but in our opinion such a course was not necessary, since the effect of its action in either case would have been the same. From the act of the court done in the exercise of such a discretion, in the absence of evidence clearly showing an abuse of it, no appeal lies. So that whether we assume that the lower court did not decline to name the penalty in the bond, or whether we assume that its memorandum amounted to an order that the operation of the decree appealed from should not be stayed by the appeal, the appeal in the second case presents nothing which can be reviewed by this court, and it must be dismissed.

The appellant contends that the act of the court in directing that no bond which might be filed in the case should stay the operation of the decree in effect deprived him of his right

of appeal by taking from him any possibility of benefit therefrom, for it would profit him not at all to have the decree reversed, if the sale which he attacked were sustained and the purchaser allowed to retain the property at the inadequate price which it had paid for it. There is obviously much force and merit in this contention, and it may readily be seen that injustice may result from the operation of that provision of the statute which authorizes a court of equity passing a decree in a case before it to discourage any appeal from its decision by taking from the appellant any possibility of benefit therefrom. If the question were before us for the first time, it might be pertinent to inquire whether the Legislature intended, after giving an absolute and unconditional right of appeal in section 26, article 5, Code Pub. Gen. Laws of Maryland, to confer upon lower courts an absolute and arbitrary power to nullify that right. But it is not a new question and we are controlled, in dealing with it, by the language of the statute as construed and interpreted by our predecessors.

The case of *Wampler* v. *Wolfinger & Strite,* 13 Md. 337, involved these facts:

A lunatic and his committee filed a bill to set aside a deed of the lunatic's property as being fraudulent and for an inadequate consideration. A decree *pro confesso* was passed, testimony taken, and a decree passed setting aside the deed, ordering a sale of the property, and appointing a trustee to make the sale. The property was sold and the sale was finally ratified, and after that the grantee in the deed from the lunatic appealed to this Court. The decree appealed from was reversed, but in reversing it the Court said:

"But, notwithstanding this reversal, nothing herein contained shall be held or construed to affect, or in any way to impair, any right which any purchaser may have acquired to the property, or any part thereof, decreed to be sold in this case, under any sale which may have been made of such property under or by virtue of the said decree; but any such

right shall be as good and valid as the same would have been in case the said decree had been in all things affirmed by this Court, or as it would have been if the said decree had not been appealed from. The court below, however, will be fully authorized to pass all and every such order or decree in the premises as may be necessary to carry into effect the principles set forth in this opinion.

"As authority for reserving and protecting the right of a purchaser under a decree, even where the decree may be reversed upon appeal, see *Chase* v. *M'Donald,* 7 H. & J. 199. See also *Barney* v. *Patterson,* 6 H. & J. 204; *Magruder* v. *Peter,* 11 G. & J. 242; *Miles* v. *Knott,* 12 G. & J. 453; *Tomlinson* v. *Devore,* 1 Gill, 345, and *Manahan* v. *Sammon,* 3 Md. 471."

At the time that case was decided the statute then in force regulating appeals in part provided (Acts of 1845, ch. 367):

"That no appeal to be taken under the provisions of this act, shall delay the execution of the decree or order, from which such appeal shall be taken, unless the court passing such decree or order shall so direct, nor unless the party prosecuting the appeal shall give an appeal bond in such form and penalty, and with such condition as the said court may direct."

The provision that no appeal should stay the execution of the decree appealed from unless the court so directed, was dropped in the Code of Pub. Gen. Laws 1860, but restored in its present form by chapter 32, Acts 1890, since which time it has remained unchanged.

The case of *Raith* v. *Bldg. & Loan Assn.,* 140 Md. 542, decided March 2nd, 1922, is the latest case in which the statute in its present form was construed.

The facts of that case were that certain property was sold at mortgage foreclosure to Charles Raith. An appeal was taken from the order ratifying such sale, but no appeal bond was filed. The order was affirmed on appeal, but Raith failed to settle for the property and the court in which the pro-

ceeding was pending ordered the property resold, unless he complied with the terms of sale on or before a day certain. He appealed from that order and filed an appeal bond. The order appealed from was reversed, and Raith then filed a petition asking to be relieved from the payment of expenses on the property and interest on the balance of the purchase money from the day of sale to the day of settlement. That was refused by the court, and from that decision Raith again appealed. In dealing with the question raised by that appeal, this Court, through CHIEF JUDGE BOYD, said:

"The sales had been ratified, and, although the Manhattan Land Corporation had taken an appeal, it had not given a bond, and hence, if the order of ratification had been reversed, the rights of the purchaser, if he had complied with the terms of sale, would not have been affected. Our statute provides that 'no appeal from any decree or order shall stay the execution or suspend the operation of such decree or order, unless the party praying the appeal shall give bond with security to indemnify the other party or parties from all loss or injury which said party or parties may sustain by reason of such appeal and the staying of the execution or operation of such decree or order,' etc. (section 29 of article 5 of the Code), and it is well settled in this State that the rights of a purchaser of property at a judicial sale are not affected, even if the order of ratification of a sale is reversed by this Court, if a bond was not given to stay the proceedings. Even then the court from which the appeal was taken may direct that the decree or order appealed from may not be stayed, if it decides that it is not a proper case for such a stay, as is provided in the latter part of section 29 of article 5 of the Code."

In dealing with the character of the discretion, reposed in the court passing the decree, to order that it shall not be stayed by appeal, in *Forbes* v. *Warfield,* 130 Md. 406, this Court, through JUDGE THOMAS, said: "The question whether in any particular case the execution of the order or decree appealed from shall be stayed by the appeal is expressly left by the Code entirely to the discretion of the lower court, and

we said in *Crownfield* v. *Phillips, supra*: 'This Court has no power to review the refusal of the lower court to annul the effect of the appeal, for it is a matter that is expressly left, by the statutes, to the discretion of the court where the proceedings are pending.'" *Crownfield* v. *Phillips,* 125 Md. 1; *County Commissioners* v. *School Commissioners,* 77 Md. 283.

The statutes, to which we have referred in connection with these and other decisions of this Court, have established these rules, which control the question before us: (1) That the rights of a purchaser at a judicial sale are not affected by a reversal of the decree ratifying the sale unless an approved bond is filed, and (2) that the court passing the decree may in its discretion order that the appeal shall not stay the execution of it, in which case a reversal of the order will not affect the rights of the purchaser, whether a bond is filed or not. (3) That the discretion thus reposed in the court is absolute, arbitrary and cannot be reviewed on appeal. If these rules occasion hardship, the fault lies in the statutes, which we are powerless to change.

From what has been said it follows that the order appealed from in No. 46, October Term, 1923, will be reversed, and the appeal in No. 47 on the same docket, dismissed, but nothing in this opinion shall be taken to affect any right which the purchaser may have in the property or any part thereof sold under the decree in this case.

> *Order in No. 46 on the docket of October Term, 1923, reversed, with costs to the appellant, and cause remanded for further proceedings in accordance with the views herein expressed; appeal in No. 47 of the same docket dismissed, with costs.*