LAURETTA SPEDDEN ET AL., EXECUTORS OF THE LAST WILL AND TESTAMENT OF ROBERT M. SPEDDEN, DECEASED, J. WM. MIDDENDORF AND WILSON P. HEYWARD, ET AL., COMMITTEE, APPELLANTS, *vs.* BALTIMORE REFRIGERATING AND HEATING COMPANY OF BALTIMORE CITY ET ALS., APPELLEES.

*Appeals in equity:* records; preparation of—; duty of clerk; right of appellee; use of copies. *Corporations:* insolvent; sale under a decree; bill filed by bondholders' committee; individual bondholder; not necessary party; death of—; purchase of property by committee; ratification of sale.

In preparing the record for an appeal in equity, when the clerk receives instructions from the solicitor for the appellant to omit anything which he thinks should be inserted, or to include what he thinks should be omitted, the clerk should communicate with the solicitor for the appellee; and if the

solicitors of the two parties differ he should consult with the Court. If the Court does not advise him, he must act according to his best understanding of the rules of the Court of Appeals, and should state in his certificate why and at whose instance he has omitted or inserted anything about which any question has been raised.                               p. 448

Where exceptions taken below have been abandoned, it is not only proper that testimony which related to those exceptions alone should be omitted, but it would be improper to have inserted it.                                      p. 449

If an appellant omits from the record evidence or papers which should have been included, and it is brought to the attention of the Court by an application for a writ of diminution, the appellant may be required to have the additional record transmitted and printed at his expense, and on default his appeal may be dismissed.                              p. 449

In preparing the record copies furnished by counsel for the appellant may be used, after being duly examined and compared by the clerk or his deputies with the originals filed by the official stenographer.                          p. 450

An individual bondholder is not a necessary party to proceedings filed by a bondholders' committee against the receivers of an insolvent corporation, for the purpose of obtaining an order for the foreclosure of the mortgage securing the bonds.
p. 452

The death of such a bondholder, pending the proceedings, does not invalidate the sale or require the Court to set it aside.
p. 452

This case is differentiated from the case of *Arnold* v. *Prospect Bldg. Asso.,* 37 Md. 457, where the sale was not only after a final decree, bringing it within the provisions of sections 7 and 8 of Article 16, but the defendant there was a material and essential party to the proceedings.     p. 455

The fact that at the foreclosure sale of the property of an insolvent corporation the sale was reported to individuals, constituting a committee of bondholders of the said corporation, does not affect the validity of the sale     p. 455

The purchasers are individually responsible for the purchase money, and in the event of a default they could be proceeded against without making the bondholders, whom they represent, parties.                    p. 456

Although the agreement between the depositing bondholders of an insolvent corporation and the bondholders' committee that purchased the property shows the intention of the parties to be that such committee could buy the property and make such disposition of it as the agreement provides for, the action of the lower Court in ratifying the sale made to the committee can not be taken as sanctioning the plan of the reorganization set out in the agreement.                    p. 457

The Court is only called upon to see to it that after the ratification of the sale the purchase money be paid or satisfactorily arranged for and properly distributed.                    p. 457

If the trustee receives sufficient cash for all expenses and to pay off the bondholders and others not parties to the agreement, and they are paid their due proportion, they have no right to object if arrangements are made with those who are parties to the agreement as will avoid the necessity of the payment of the additional cash which would be repaid to them.                    p. 457

A creditor's suit does not abate by the death of a plaintiff or any creditor who may have come in, if there be a plaintiff or creditor competent to prosecute the suit.                    p. 454

*Decided February 2nd, 1912.*

Two appeals in one record from Circuit Court No. 2 of Baltimore City (STUMP, J.).

The appeals were argued together before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS; PATTISON, URNER and STOCKBRIDGE, JJ.

*Wm. H. DeC. Wright* and *George Whitelock* (with whom was *E. P. Keech, Jr.* on the brief), for the appellants.

*Clarence K. Bowie* and *Edward Duffy,* for the appellee.

*George R. Willis* and *Clarence K. Bowie* filed a brief on behalf of Francis T. Homer, Michael Schloss, et al., committee of bondholders, and purchasers at the resale of the property, one of the appellees.

*Lemmon & Clotworthy* and *Duffy, Bond & Robinson* filed a brief for the Continental Trust Co., trustee, one of the appellees.

BOYD, C. J., delivered the opinion of the Court.

This case is now before us on appeals from the order of Circuit Court No. 2 of Baltimore City, overruling exceptions filed by J. William Middendorf and Wilson P. Heyward, committee, and by the executors of Robert M. Spedden, and finally ratifying and confirming a sale made by the Continental Trust Company, trustee, on the 24th day of April, 1911. At the October Term, 1911, we had before us an appeal of Richard B. Fentress from the order of the lower Court passed on March 27th, 1911, ordering a resale of the property of the Baltimore Refrigerating and Heating Company, which the trustee had made to the Central Securities Company—that company having failed to comply with the terms of sale. We sustained the lower Court, and we now have before us the order ratifying the sale which was made in pursuance of the order of March 27th, and of one of April 17th, 1911—the latter extending the time for sale from the 17th day of April (the time fixed by the order of March 27th) to April 24th. The opinion is reported *ante,* page 17.

1. A motion to dismiss these appeals has been made, and we will first consider that. The ground of the motion is that the appellants failed to provide a full, fair and proper transcript of the record, proceedings and evidence in the Court below. It is contended that that is shown by the fact, (a) that acting under the instructions of the solicitors of the appellants the clerk of the lower Court did not transmit to this Court all of the testimony produced at the hear-

ing, but omitted from the transcript all of it, except that of three witnesses specially named in the instructions of the solicitors and portions of the testimony of two other witnesses, and (b) that the only testimony ordered by the instructions to be transmitted was furnished to the clerk by the appellants' solicitors in the shape of carbon copies which were not properly authenticated and were procured by them from an unnamed stenographer.

As intimated at the hearing, the reasons given to sustain the motion to dismiss are under the circumstances insufficient. It was not suggested in the motion, or at the hearing, that any testimony, paper or document had been omitted from the record which was necessary for the Court to have before it, in order to properly dispose of the questions at issue. If such had been the fact the well established practice in this Court would have been—not to file a motion to dismiss the appeals but to apply for a writ of diminution, so as to have such omitted testimony, paper or document brought before us. It was suggested that such practice would or might result in an appellant selecting a few papers or a small part of the testimony from the record below to be transmitted to this Court, and requiring the appellee to apply for a writ of diminution, and thereby place him in the position of having to pay for the greater part of the record. But there are several manifest answers to that suggestion. In the first place, rule 11 of this Court (section 34 of Article 5 of the Code) makes it the duty of the clerk of the Court from which the appeal is taken, in making up the transcript of the record of equity proceedings, to omit certain papers, orders, etc., therein mentioned, "and all merely collateral proceedings not in anywise involved in the matter of appeal, and which can not be material to the hearing and decision of the case by the Court of Appeals." It then goes on to provide that "any party to the appeal, however, shall have the right to direct any particular part of the proceedings of the cause, that would otherwise be omitted, to be incorporated in the transcript, the clerk stating at whose instance the same is inserted, that costs may be awarded, as the matter

so directed to be incorporated may be deemed material or not by the Court of Appeals."

It is therefore the duty of the clerk to omit irrelevant and immaterial matter from the record. The clerk may not always know what is irrelevant or immaterial, but when he receives instructions from a solicitor for the appellant to omit anything which he thinks should be inserted, or to include what he thinks should be omitted, he should communicate with the solicitor for the appellee, and if the solicitors of the two parties agree his course is plain, but if they differ he can consult with the Court from which the appeal is taken, or if that Court does not advise him he must act according to his best understanding of the rules of this Court, and should state in his certificate to this Court the facts—why and at whose instance he has omitted or inserted anything about which any question has been raised. The affidavit of the deputy clerk whose duty it was to superintend the making of this transcript states that in this case he called on counsel for appellants for their instructions as to what should go in the record, and received the written instructions that are in the record, and also verbal ones to notify counsel for the appellees when the transcript was complete, so that they could examine the same for the purpose of making additions to it, if they so desired. He followed those instructions and kept the transcript at least three days after giving notice to the counsel for appellees, before sending it to the clerk of this Court. After he had sent the record to this Court several of the counsel for appellees called at his office to examine it, but were told that it had been transmitted, and were also informed that counsel for appellants had stated that if at any time counsel for appellees desired additional papers or proceedings to be made a part of the record the appellants would take or agree to proper steps to have the same inserted therein.

In the order of the solicitors for appellants directing what should be inserted in the record, it was stated as a reason for omitting the other testimony that they had determined not to press upon appeal any exceptions to the resale based

upon the inadequacy of the price obtained for the property. Inasmuch as such exceptions were abandoned, it was not only proper that the testimony which only related to those exceptions should be omitted, but it would have been improper to have inserted it. Sometimes appellants rely entirely on objections to the rulings of the lower Court to questions raised by the pleadings, or in some other way than by the evidence, and if they abandon or waive all right to question the right to the judgment or decree, so far as the evidence and rulings based on it are concerned, they are not required to bring the testimony before us. We might illustrate what we mean by referring to some cases where that has been done, but deem it unnecessary to do so.

If an appellant omits from the record evidence or papers which clearly should have been included, and it is brought to our attention on application for a writ of diminution, we can protect the appellee by requiring the appellant to have the additional record transmitted and printed at his expense, and on default can dismiss his appeal. If we were satisfied that an appellant had brought only a small part of what should clearly have been included in the record, in order that he might have his transcript filed here within the time required after the appeal is taken, or simply to avoid proper costs, we could refuse to allow a writ of diminution, if the additional record could not be obtained and filed within the time allowed by statute or the rules of this Court, or if any other improper conduct was deliberately attempted to be practiced in reference to the record, it could be dealt with in a way to prevent injustice being done the appellee, or the Court being imposed on or its rules violated. But it can not be denied that great injustice may be done those who desire to have the decisions of the lower Courts reviewed, if the appellees can demand that everything in the papers below shall be included in the transcript, regardless of whether it is relevant or material.

The objection that the testimony which was inserted was in the shape of carbon copies furnished by the appellants and procured from an unnamed stenographer is met by the

affidavit of the deputy clerk, which shows that the practice of the lower Court is, when testimony is taken in open Court, to have the official stenographer make due and proper stenographic notes of the testimony but not to write it up, unless requested by one of the parties, and that when so requested it is written up at the expense of the party asking for it and that many counsel when having depositions written up for the purpose of appeal have carbon copies made which are furnished the clerk. According to the affidavit that was done in this case and the official stenographer filed with the clerk what purported to be a transcript of his stenographic notes of the testimony taken by him, and the carbon copies furnished by counsel for appellants were duly examined and compared with the original filed by the official stenographer, by the deputies of the clerk.   .  .

We have thus discussed the motion to dismiss at more length than usual because we deem it important that the practice be understood, but we have no hesitation in overruling the motion under the circumstances of this case, which we accordingly do.

2. We will now consider the exceptions to the sale, which can be grouped under two heads. The first is, what was the effect of the death of R. M. Spedden, one of the plaintiffs, on April 21, 1911, three days before the resale took place? The appellants contend in their brief that "the cause abated, and that technically no sale should have been made until Spedden's executors had been made parties in his place." As shown by the record in the former case, Messrs. Middendorf and Heyward, committee, and Robert M. Spedden filed a bill in equity against the Baltimore Refrigerating and Heating Company, the receivers who had been appointed, the members of what is called the Homer-Betts Committee, Richard B. Fentress and the Continental Trust Company. The ultimate object of the bill was to have the mortgage given by the Baltimore Refrigerating and Heating Company to the Continental Trust Company foreclosed. That mortgage was given to secure two thousand bonds for a thousand dollars each and the usual provisions in such

mortgages were contained in it. The bill was filed on November 3rd, 1910, by the above mentioned plaintiffs, "who sue as well for themselves as for all other holders of the bonds * * * who will come in and contribute to the expenses of this suit." It alleges that Messrs. Middendorf and Heyward by a written agreement (a copy of which is filed) have been constituted a committee of bondholders "expressly vested with full title to and ownership of bonds and coupons thereunder deposited and having plenary power of representation of their constituents in the premises; and to said agreement, your Orator, Robert M. Spedden, owning 68 bonds of said company, and certain other bondholders having heretofore subscribed."

On November 12th, 1910, the plaintiffs filed a petition praying that after due notice an order be passed for a sale of the property of the company, free and clear of the lien of said mortgage, before final decree in this cause. That ultimately resulted in an order of the Court being passed on the 7th of December, 1910, directing a sale, and appointing the Continental Trust Company trustee to make it. On February 3rd, 1911, the trustee reported a sale of the property to the Central Securities Company, which was ratified and confirmed. That company having failed to comply with the terms of sale, steps were taken to have a resale at its risk, which resulted in an order of resale being passed on the 27th day of March, 1911, which directed that the resale take place on the 17th day of April, 1911. On the latter day the Central Securities Company filed a petition stating that it believed that if the sale was postponed it could arrange to comply with the terms of sale and thereby avoid a resale and praying that the resale be postponed until April 24th, 1911. The two committees of the bondholders united in the request for the postponement, and it was so ordered by the Court. That company having failed to make the arrangements the resale took place on the 24th of April. The question then is, whether under these circumstances the death of Mr. Spedden requires that the resale be set aside.

The provisions of Article 16 of the Code in reference to cases which would but for the statute have abated on the death of any party are very liberal. There certainly can be no ground for the contention that this proceeding abated by reason of the death of Mr. Spedden and the most that can be claimed is that his death should have been called to the attention of the Court, so it could have ordered a post-ponement of the sale, if it deemed that desirable, or have taken such steps as seemed to it proper and which it was authorized to adopt. As there was no final decree section 8 of Article 16 did not in terms apply, but if there was any possible danger of the interests of Mr. Spedden's estate suf-fering by reason of a sale at that time the Court might under its general equity power have directed the sale to be postponed if application had been made to it,—although such an application would more properly have come from those interested in Mr. Spedden's estate than from others. The testimony shows that one of his solicitors of record was actually present at the sale, and it is not claimed that the trustee was requested to postpone the sale and it is not even shown that it was informed of the death of Mr. Spedden. There is nothing to show that the Court's attention was called to his death.

But upon what principle should the sale have been post-poned on account of Mr. Spedden's death? Clearly he was not a necessary party to the suit, as the mere fact that he owned more bonds than any other bondholder represented by the Middendorf-Heyward Committee did not give him more legal interest in the case than any of the others. The order of Court directing the original sale recites that there were 1277 bonds outstanding, and that parties owning or representing 1187 of them were before the Court consenting to the passage of that order. As Mr. Spedden only owned 68 it will be seen that he was not only not in control, but had a small portion of the total. If he was a necessary party then the theory of this whole proceeding was mani-festly wrong, as none of the other bondholders represented

by either of the two committees were parties, and the holders of ninety bonds were not even represented. Just why he was made a party is not shown, but clearly he was in no sense a necessary party.

But in addition to that, he was represented by the Middendorf-Heyward Committee, and he had agreed with that committee and with other bondholders that signed the agreement that "The committee are hereby invested with full title to and ownership of said bonds and coupons, and with all the rights and powers of the depositing bondholders as owners or holders of said bonds and coupons." It could not be contended by the committee that its powers had ceased before Mr. Spedden died, for if that were so, what standing would it have to except to the resale? That committee and Mr. Spedden asked for the sale, the Homer-Betts Committee and R. B. Fentress united in the request and the Continental Trust Company was willing for an immediate sale, provided it was permitted to make it. Whether or not the Court could under the circumstances of this case have deprived the Continental Trust Company of the right to sell, unless it was first removed for sufficient cause, which the Court was evidently of the opinion did not exist, is not necessary to decide, but it is clear that the order for sale was passed by agreement of those representing over 90 per cent. of the outstanding bonds and of the trustee. Although the exhibits filed are not in the record, the answer of the trust company shows that it had received since the order of Court was passed requests to make the sale, signed by parties purporting to represent 1166 bonds, and the answer says "with which requests this defendant is willing to comply under the direction of this Honorable Court under the order herein already entered." That answer was filed on December 20th, 1911, over a month before the original sale. When the order for postponement of the resale was applied for, it was apparently not thought neces-

sary to have Mr. Spedden's approval of it, but the two committees did unite in the request.

While this was not technically a creditor's suit, it was of that nature, and a creditor's suit does not abate by the death of a plaintiff, or any creditor who may have come in, if there be then a plaintiff or creditor competent to prosecute the suit. *Austin* v. *Cochrane,* 3 Bland, 337; *Whelan & Whelan* v. *Cook,* 29 Md. 1. Indeed it would be disastrous to attempted reorganizations of corporations and to the interests of the bondholders, if the contention of the appellants be adopted. When there are many bondholders, óne or more of them may die between the dates of the institution of the proceedings and the sale, and we can see no real difference between the rights of a bondholder who was actually made a party in a proceeding such as this and those of one who was not, so far as their interests are liable to be affected by death. If this sale had been made by the trustee on the application of the requisite number of bondholders, and the Court had not passed the order referred to, it could not be contended that the death of Mr. Spedden or any other bondholder could have affected it. The case of *Baltimore City* v. *United Railways Company,* 108 Md. 64, and cases therein cited show how far this Court has adopted the principle of representation by a trustee in a mortgage given, to secure a number of bonds. The rights of these bondholders must be determined by the terms of the mortgage notwithstanding the order óf sale.

It may be that if Mr. Spedden had not died and could have been present at the sale, his influence might have been beneficial to the bondholders and possibly he might have induced some purchaser to bid more, but any loss by reason of his unfortunate death could not have been averted by suggesting his death to the Court.

So without further discussion of this branch of the case we are of the opinion that the death of Mr. Spedden did not invalidate the sale, or require the Court to set it aside.

as such cases as *Glenn* v. *Clapp,* 11 G. & J. 1; *Schley's Lessee* v. *Baltimore,* 29 Md. 34, and others relied on by the appellants are not applicable to such circumstances as we have before us. We have not overlooked *Appold* v. *Prospect Bldg. Association,* 37 Md. 457, but the sale in that case was not only after a final decree, bringing it within the provisions of sections 7 and 8 of Article 16, but the defendant was a material and an essential party to the proceedings. Moreover, the circumstances were wholly different in other respects.

3. The other exceptions are based on the fact that the sale was reported to Messrs. Homer, Betts, Schloss, Winchester and Timanus "constituting a committee of bondholders of said Baltimore Refrigerating Company." It is said in the appellant's brief that "While the transaction which the trustee went through with on April 24th, 1911, was called a sale, it was in reality no sale whatever, but was in substance and effect a mere tentative arrangement which gave the Homer-Betts Committee a chance to gain control of the property and to arrange, if they could, ultimately to take it over at $261,000."

We can see no valid objection to these purchasers being described as they were in this report. Inasmuch as they were acting for the benefit of the bondholders who had signed their agreement, it was natural that they would want the report to show in what capacity they had purchased the property, as otherwise some of the bondholders might not understand that they were not buying it for their own benefit. These purchasers paid the $25,000.00 required to be paid at the time of the sale, and there is nothing whatever to show that they could not or would not comply with the terms of sale. As the sale was ratified on July 20th, 1911, we might assume that the trustee would not now be in this Court attempting to sustain it, if there had been default in the payment due at that time. The one-fourth of the purchase money was required to be paid on the day of the

ratification of the sale, and as that amounts to over $65,000.00, the bondholders will be well protected, if the trustee has in hand that amount as a part of the purchase money. In the event of a resale for non-compliance with the terms of sale, whether the purchasers are liable as individuals, or as representatives of the bondholders who signed the agreement, a resale would be at the risk of the real purchasers and the trustee would·have in hand a very substantial margin if the property brought less at another sale.

But we have· no doubt that these five purchasers would be individually responsible for the purchase money, and in the event of a default they could be proceeded against without making the bondholders they represent parties. They may or may not be amply protected by those bondholders, but that is a question for them and not one in which the Court is concerned. The trustee was dealing with them and the Court sanctioned the sale made to them, and they must see that the sale is complied with to the satisfaction of the trustee and the Court.

It is said in the Homer-Betts agreement filed in this case "that the committee shall be and it is hereby, vested with all rights and power of owners of the bonds, claims and certificates of stock deposited hereunder;" that it "shall have power to bid in or purchase the said property. or any part thereof, and, if necessary, to use the bonds deposited hereunder, together with any bonds or securities which the committee may acquire for the purpose of purchasing such properties or any part thereof, and to pay therefor such amounts as in their judgment may be necessary or desirable to protect the interests of the depositors hereunder." If it acquired any or all of the property of the company it had power to transfer it to a new company which the committee may cause to be incorporated; it had power to sell and convey any property acquired by it on terms and prices to be fixed by two-thirds in amount of the depositing bondhold-

ers; "to procure such loan or loans as may be required by the committee for the purpose of this agreement, or for purchasing any property, claims or securities in connection therewith," and other large powers are conferred upon the committee.

That agreement clearly shows that the intention of the parties to it was that the committee could buy the property and make such disposition of it as is therein provided for, but we do not understand how it can be said that the lower Court by ratifying the sale made to the committee thereby sanctioned the plan for reorganization set out in the agreement. All that the Court is called upon to see to after the ratification of the sale is that the purchase money be paid or satisfactorily arranged and is properly distributed. If the trustee receives sufficient cash to pay all expenses and those who are not parties to that agreement, and they are paid their due proportion, what possible difference can it make to them if it makes such arrangement with those who are parties to the agreement as will avoid the necessity of the payment of the actual cash which would be repaid to them? If a mortgagee purchases the property at a foreclosure sale, it would be very unusual for a trustee or other person making the sale to require him to pay in cash more of the purchase money than is necessary to meet the expenses and the claims of others which they are entitled to have paid out of the fund, and it is not unusual for a committee of bondholders to purchase the property intended to secure their bonds, and then make such arrangements with the trustee as will secure him and avoid the handling of so much cash. Of course, those who have not entered into the arrangement are entitled to their due proportion in cash, but what more can they ask?

So without further prolonging this opinion, we are satisfied that the lower Court was right in overruling the exceptions and confirming this sale, and its order of July 20th, 1911, will be affirmed.

> *Order affirmed, the appellants to pay the costs.*