LILLIE E. TUCKER ᴇᴛ ᴀʟ. *v.* WILLARD P.
HUDSON ᴇᴛ ᴀʟ.
[No. 14, October Term, 1929.]

*Decided December 23rd, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John S. Young* and *S. A. Williams,* with whom was *F. R. Williams* on the brief, for the appellants.

*Frederick J. Singley* and *Stewart O. Day,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

The appeal in this case is from an order or decree of the Circuit Court for Harford County, in equity, sustaining a demurrer to the amended petition filed by the appellants. The facts upon which the controversy now submitted to this court is based, as disclosed by the record, are substantially these: That Eugene Tucker during his lifetime was the owner of sixty-seven and one-half square perches of land situate in Harford County in the village of Forest Hill, upon which was located a dwelling house. That during his lifetime the said Eugene Tucker, with his wife Lillie E. Tucker, executed a mortgage on the property, dated October 5th, 1923, to Frank H. Jacobs in the sum of $5,200, which was subsequently assigned, on October 8th, 1923, by the mortgagee to several parties for varying amounts: $4,000 to Stevenson A. Williams and Thomas White Hall, trustees; $900 to Eliza C. Jarrett, guardian of James Henry Jarrett, Jr.; and $300 to E. Rush Williams, without recourse, each of said amounts to be an equal lien. The appellant Stevenson A. Williams was named as attorney in the mortgage to exercise the power of sale therein contained, which power was, after default, to sell "at public sale, or after a public offering, at private sale, the mortgaged premises." That Eugene Tucker died on the 5th of January, 1925, leaving a widow, Lillie E. Tucker, an adult daughter, Mary E. Tucker, and a minor son, Paul E. Tucker, as his heirs at law. That on January 14th, 1925, Williams, the attorney named in the mortgage, the same being in default, docketed suit for foreclosure, and filed his bond for the faithful discharge of his duties as such attorney, which bond was duly approved by the clerk of the court. That, at the request of the widow, the attorney withheld the advertisement of the property, and nothing more was done in respect thereto until July 27th, 1927, at which time an

agreement for the private sale of the property was entered into by and between Lillie E. Tucker, Mary E. Tucker, and Lillie E. Tucker as guardian for Paul E. Tucker, parties of the first part; and Willard P. Hudson and Blanche Spicer Hudson, his wife, of the other part, who were then occupying the property as tenants. This agreement was for the sale of the mortgaged property, the purchase price being $6,750, with interest from the 21st day of July, 1927. That the tenancy of Hudson and wife was to end as of that date, and settlement was to be made, $200 upon the signing of the agreement, and the balance when deed was executed conveying said property to Hudson and wife "free and clear of encumbrances, in fee simple, transferring a good, marketable title to said property." That subsequent to the signing of this agreement of sale, Williams, the attorney named in the mortgage, reported this private sale, made by the heirs of Eugene Tucker, to the court, filing with said report a copy of the agreement, and prayed that said sale might be finally ratified, certifying to the same having been *bona fide* and fairly made and for the best price that could be obtained. On March 30th, 1928, the heirs of Eugene Tucker filed their petition in the mortgage foreclosure proceeding, reciting the facts hereinbefore outlined, and alleging that the price agreed to be paid at the private sale was as much as, if not more than, it could be sold for at public sale, and that it was for the best interest and advantage of the infant, as well as others interested therein, that the sale should be ratified and confirmed by the court; further, that such a proceeding would save considerable cost and expense to all parties in interest; and prayed that the court allow the petitioners to intervene in the foreclosure proceeding, and take jurisdiction in the premises, and further, that the private sale reported by Williams, attorney, be ratified and confirmed. Hudson and wife, on April 6th, 1928, filed objections to the ratification of the sale, and on April 23rd, 1928, filed their answer to the petition of the heirs of Eugene Tucker. On August 28th, 1928, the court passed an order taking jurisdiction, and granting

leave to the Tucker heirs and Williams, attorney named in the mortgage, to amend the proceedings in such way as they may be advised for the purpose of bringing the matter within the terms of sections 102 and 152 of article 16 of the Code, and further requiring that Paul Tucker should be made a defendant, so that a guardian *ad litem* might be appointed for him, and all lien-holders should likewise be made defendants. Later the amended petition was filed, in which all of the parties interested, either as heirs or lien creditors, as well as Williams, the attorney named in the mortgage, were made parties. The allegations of this amended petition were substantially those of the first petition, and prayed that the petitioners be permitted to intervene, or that the court direct a consolidation of said proceeding for the exercise of the power of sale contained in said mortgage, with this proceeding; second, that the court ratify and approve said contract of sale; and third, that the liens on said house and lot be paid out of the proceeds of sale.

To the amended petition thus filed, the defendants Hudson and wife demurred. The demurrer was sustained. The question presented by the record may be said to be two-fold: First, whether or not, under the circumstances of this case, Hudson and wife, the vendees in the contract of sale, should be compelled to take the property; and second, whether or not the practice followed in this case is such as should be sanctioned by this court?

Treating these questions in inverse order, we find an attempt to perfect a title, such as the purchasers would be compelled to accept, by combining the authority conferred upon a court of equity by sections 102 and 152 of article 16 of the Code, with the authority which an attorney named in a mortgage has, under the powers specifically enumerated therein. The mortgage being in default on January 14th, 1925, there can be no doubt that the attorney named in the mortgage had the authority to docket suit and file his bond, preliminary to a sale of the mortgaged premises in accordance with the power conferred upon him by the terms of

the mortgage. This he did; and then, upon the request of some of the heirs of the mortgagor that they be permitted to attempt a private sale of the property, failed to take any further steps in the foreclosure proceeding for more than two and a half years. He then, on August 18th, 1927, reported a sale, made by the widow and adult daughter of the deceased, and the widow in the name of and on behalf of the minor son, to the defendants Hudson and wife, and asked that such sale be ratified. It seems clear that the only sale which the attorney named in the mortgage had the authority to make or report to the court for ratification was a sale made in conformity with and under the powers expressed in the mortgage. The mortgage provided that the attorney could only make a private sale of the property after a public offering, which concededly was not done.

The general rule is that a party exercising power such as here attempted must comply strictly and fully with the terms of the instrument creating the power. There may be exceptions to this general rule, as where a trustee making sale under a decree of court varies in some degree from the terms of the decree, and where the court would ratify the sale when it is shown that the deviation has resulted in a benefit to all concerned, or at least has not injured them. In the present case, even if we admit for the sake of the argument that it presents such an exceptional case, we are still met with the proposition that the sale reported by the attorney named in the mortgage was not his sale at all, but a private sale made by the heirs of Eugene Tucker. Therefore, it must follow that, in the case of a sale reported to a court of equity, which the attorney reporting same neither made nor had the authority to make, the court itself is without jurisdiction to ratify. In other words, if the party reporting the sale had no authority to make such report, the court is without jurisdiction or authority to ratify. The only sale which the attorney named in the mortgage had the authority and power to report to the court for ratification was one made by him as such attorney in conformity with the terms of the

mortgage. When Williams, the attorney named in the mortgage, reported the sale made by the Tucker heirs, and subsequently was made a party defendant in the petition filed by them for ratification, and did not object thereto, the only effect was to signify his assent to the ratification of the private sale, in the event there were no objections on other grounds which would be fatal to the ratification, and also to estop him from proceeding further with the foreclosure until this question had been disposed of by the court. In our opinion, the court had no more jurisdiction to ratify the sale reported by the attorney in this case, than to confirm a sale reported by an entire stranger to the proceedings, and the fact that the attorney was one named to make sale under the powers contained in the mortgage, in no way distinguishes or differentiates him from a stranger. He could only report such a sale as he was authorized to make, and the court has no jurisdiction to ratify an unauthorized sale.

If we consider the report made by the attorney named in the mortgage, together with the allegations contained in the petition of the heirs of Eugene Tucker, as a bill of complaint attempting to confer jurisdiction upon the court, in cases in which the provisions of section 152 of article 16 of the Code apply, the question is: Are there such allegations contained either in the petition or in the report made by the attorney as would establish the court's jurisdiction under said section? In other words, would an original bill filed by the heirs of Eugene Tucker, which contained the language used in their petition and the report made by the attorney, be a compliance with the requirement of section 152 as previously construed by this court? In the petition of the Tucker heirs it is alleged that they "show that their ownership of the said house and lot was such on the date of the making of said contract of sale, as would have entitled them to file a petition in this court alleging the impartibility of said house and lot, without loss and injury, and that it would be for the interest and advantage of said owners that the same should be sold under a decree of this court, and the

proceeds of sale applied to pay the liens thereon and thereafter to divide the balance amongst the said owners in accordance with their respective interests." Is the language just quoted sufficient to give the court jurisdiction under section 152? We think not. We have been referred to no case, and have found none, in which it has been held that the broad allegation, that the parties plaintiff and defendant own property in such manner as would entitle them to a sale under the provisions of this section, is sufficiently definite an allegation of the necessary jurisdictional facts. This section has been so frequently before this court for construction that it would serve no useful purpose at this time to dwell upon its history and purpose. Suffice it to say that the primary purpose of the statute was to permit concurrent owners to partition among themselves the common property, so that each might hold his portion or share in severalty, and if it is alleged and proved that the property which is held in common is not susceptible of division in kind, without loss or injury to the parties interested therein, a sale thereof may be had in lieu of partition, and the proceeds arising therefrom distributed to the parties in the proportion of their interest. In order to give the court jurisdiction, it must be distinctly alleged, first, that the parties are concurrent owners of the property or an interest therein; second, that such property is not susceptible of partition in kind without loss or injury to the parties; and, third, that it is necessary that the property be sold for the purpose of making a division of the proceeds. The issue in such a proceeding is whether, as amongst those entitled in common, the property should be sold instead of divided. In *Miller's Equity Procedure,* p. 483, sec. 400, it is said: "In any proceeding for the sale of property, under this section of the Code, the bill must allege, in order to confer jurisdiction upon the court, that the property cannot be divided without loss or injury to the parties interested"; and in section 401: "The fact that the land cannot be divided without loss or injury to the parties interested is the basis of the jurisdic-

tion of the court; and when this fact exists and is properly averred, a party has the right to the aid of a court of equity to decree a sale." See also *Wilson v. Green*, 63 Md. 547; *Thruston v. Minke*, 32 Md. 571; *Fox v. Reynolds*, 50 Md. 564; *Johnson v. Hoover*, 75 Md. 486; *Ballantyne v. Rusk*, 84 Md. 649.

Section 152 of the Code further provides: "And if any contract has been made for the sale of any lands, tenements or hereditaments held as aforesaid, or any interest therein, for or on behalf of any infant, idiot or person *non compos mentis*, which the court upon hearing aforesaid and examination into all the circumstances shall think for the interest and advantage both of such infant, idiot or person *non compos mentis*, and of the other person or persons interested therein, to be confirmed, the court may confirm such contract." The meaning of this language, when construed in conjunction with the other provisions of section 152, is clear, that if a bill is filed by and against concurrent owners of property which is alleged to be insusceptible of division in kind without loss or injury, and where one or more of the parties are infants, and a contract has been made for the sale of such land held as aforesaid, or any interest therein, for or on behalf of any infant, the court, upon an examination and being convinced that it is for the benefit and advantage of the infant, as well as all other persons concerned, may confirm such contract, and all sales and deeds, made in pursuance of and agreeable to an order of the court in the exercise of the above power, shall be good and sufficient in law to transfer the estate and interest of such infant, idiot or person *non compos mentis* in such lands, tenements or hereditaments, according to the true intent and meaning of such deeds, respectively; and in all cases of deeds executed in the exercise of the above power, the same shall be executed and acknowledged by such person or persons as the court may appoint for the purpose.

We are not unmindful of the decisions of this court which hold that the allegation of insusceptibility of partition with-

out loss or injury need not be made in the exact words of the statute. *Wilson v. Green, supra; Slingluff v. Stanley,* 66 Md. 220; *Smith v. Townshend,* 27 Md. 368; *Thruston v. Minke, supra.* But in none of these cases has the necessary jurisdictional allegation been in so broad or general language as is contended for here. We think that it is required that the allegations of concurrent ownership and insusceptibility of partitition without loss or injury should be direct and specific in all cases, and more especially when an attempt is made to engraft proceedings under section 152 upon mortgage proceedings already instituted and in which the bond of the attorney named in the mortgage has been filed.

It is also contended by the appellants that the provision of section 102 of article 16 of the Code is authority for the court to ratify this sale. This section provides: "If any infant or person *non compos mentis* be entitled to any real or personal property in this state, or any interest or estate therein, and the same shall be liable to any mortgage, trust, lien, or in any way charged with the payment of money, the court shall have the same power to decree in such case as if such infant were of full age, or such *non compos mentis* of sound mind." And the appellants' contention is that because the infant here has an interest in the property which is subject to the mortgage, this section gives authority to the court to deal with the property in all proceedings as if the infant was an adult. We do not think the section is susceptible of as broad application as that sought by the appellants, but is confined to cases in which the court has acquired jurisdiction on other grounds, and is intended to remove the disability of infancy in so far as it may be an obstacle in dealing with the property over which the court has acquired jurisdiction. *Owings' Case,* 1 Bland, 407. In that case the party had obligated himself in respect to the property while in sound mind, and subsequently became insane; and it was held that, under the provisions of this section, the fact of one being *non compos mentis* could not be interposed to prevent the enforcement of a lien or binding contract entered into while of sound

mind, and that it is clearly confined to cases instituted for the enforcement or collection of a trust, mortgage, lien, or charge for the payment of money upon the property.

All that we have thus far said would be applicable in a case where all of the parties concerned were asking that the contract of sale be ratified. But such is not the present case. Here the vendee under the contract of sale is objecting to its ratification, which practically converts the present proceeding into a bill for specific performance by the vendors against the purchaser, and makes the rule governing such class of cases applicable here. An application for specific performance of a contract is addressed to the sound discretion of the court, and it should only be decreed when the contract discloses that both parties thereto could resort to such a remedy. "Every agreement, to merit the interposition of equity to enforce it, must be fair, just, reasonable, *bona fide,* certain in all its parts and mutual." *Gelston v. Sigmund,* 27 Md. 334. As a general proposition, where a contract, from any cause, is incapable of being enforced against one party, that party will not be permitted to enforce it against the other. *Hensel v. Calder,* 135 Md. 487; *Fox v. Fraebel,* 140 Md. 54. In the last mentioned case it is said: "The authorities are clear that the courts will not specifically execute a contract which is lacking in mutuality of obligation. *Duvall v. Myers,* 2 Md. Ch. 402; *Welty v. Jacobs,* 171 Ill. 624; *Milburn v. Michel,* 137 Md. 415."

The contract in this case was made after the attorney named in the mortgage had instituted his suit and filed his bond. The attorney was not a party to the contract and therefore not bound by its terms. There was nothing to prevent him from proceeding with the sale of the property in accordance with the powers conferred upon him by the mortgage. The vendors contracted to convey a fee simple title, although at the time the contract was entered into they were only capable of conveying two-thirds of the equity of redemption in the property, one of the parties owning a third being the minor son. There was no time specified in the con-

24

tract at which the conveyance was to be made. Under such circumstances the law contemplates a reasonable time. If, therefore, the vendee, after the lapse of a reasonable time, could not successfully file a bill for specific performance against the vendors for the conveyance of a fee simple title to the property, the vendors are not entitled to maintain such a bill against the vendee. If it be contended that the mutuality is to be determined at the date of the decree, the answer is, in our opinion, that the court ought not to decree specific performance in a case such as this, after the lapse of more than two years from the date of the contract. We deem it unnecessary to discuss further this phase of the case, because from what we have said, on the other points involved, the court not only should not ratify the sale, but was without jurisdiction to do so.

*Decree affirmed, with costs to the appellee.*