WILLIAM WALLACE KEMP ET AL. *v.* ALBERT
EVERETT WATERS ET AL.
[No. 51, October Term, 1933.]

*Decided January 10th, 1934.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Lewis W. Lake,* for the appellants.

*Louis J. Jira* and *Henry H. Waters,* with whom was
*Elmer M. Harper* on the brief, for the appellees.

522

BOND, C. J., delivered the opinion of the Court.

Tenants in common, owning together a five-sixth's interest in real property not susceptible of partition in kind, have by their bill of complaint sought a sale and division of the proceeds, and have appealed from a decree allowing only a sale at or above a reserved or upset price; and the main question is whether the right to sale can be so restricted.

The property is made up of two contiguous lots situated on Oliver and Belvedere Streets in Baltimore City, one lot being improved by a factory occupied by a corporation, the stock of which, with unimportant exceptions, is owned by two of the complainants. The factory property is leased from all the individual owners, and the corporation has been paying rent to all. The second lot is improved by a garage building, occupied by a stranger to the suit, he, too, paying rent to all the tenants in common. A dispute arose over the amount of rental that should be paid for the factory under changed conditions, and the corporation gave notice of its intention to terminate its existing lease at the end of the year 1932; but it has continued in possession during a continuation of the dispute as to the amount of rent under a new lease. In this situation the complainants have filed their bill for the sale for division. It is not disputed that the property cannot be divided in kind among the parties in interest, and that a sale would be necessary to a division and termination of the tenancy in common.

The court having announced at the outset of the hearing that sale would not be permitted under present conditions in the real estate market except at or above a minimum price, testimony was taken as to value, and experts called, while agreeing that sale at any considerable price would be improbable on the existing market, expressed opinions that the value of the combined property in a more favorable market would be above $40,000, and tax assessments and an appraisal for insurance at the instance of the corporation tenant placed the values at still higher figures. The complainants in open court made an offer to buy the property now

at $30,000, or to have their interest included in a sale at that price. Upon the evidence received the court passed its decree for sale at public auction "at an upset price fixed by the court which shall not be less than Forty Thousand dollare ($40,000) in any event, or at private sale if an adequate price above said minimum of Forty Thousand Dollars ($40,000) gross fixed by the court should be offered."

The statute authorizing sale to make division among cotenants in this state (Code, art. 16, sec. 152) contains no provision for restricting the sale to a minimum or upset price, and it has not been the practice to do so. Compare Code, art. 46, sec. 27. Although the words of the statute are merely empowering in form, that "the court may decree a sale," it has been understood that they provide an alternative method of division to which a co-owner is entitled as fully as he is entitled to partition in kind when that is feasible. The right to partition at common law has been one of the incidents of ownership in common, and absolute, and so the right to sale as the alternative means of making division has been regarded equally as one of the incidents of ownership, and absolute. Property held in common has always been subject to the advantage or disadvantage, whichever it might be, of an option in any one owner to take his share separately, by partition if possible, by sale if that is not possible. "Actual partition was, by the common law, a matter of absolute right, irrespective of the fact whether the partition would prove beneficial or ruinous. Under the statutes authorizing the court to order a sale in preference to a partition, such sale is a matter of absolute right when the circumstances designated by the statute are found to exist." *Freeman, Cotenancy* (2nd Ed.), sec. 539. "The right of partition in kind was an undeniable right if feasible. It existed irrespective of the statute under consideration (*Campbell v. Lowe,* 9 Md. 500), but, where that was found to be impossible, the right to a sale under the statute, as the only means of effecting partition, became equally undeniable." *Johnson v. Hoover,* 75 Md. 486, 492, 23 A. 903, 905. "It may sometimes happen that a co-owner does great

injustice to others by insisting upon a partition or sale, but it is a well-established right, and if he complies with the requirements of the statute the court has no power to prevent it." *Tolson v. Bryan,* 130 Md. 338, 344, 100 A. 366, 368; *Tucker v. Hudson,* 158 Md. 13, 21, 148 A. 116. The decree appealed from denies this right except upon the obtaining of a price which the evidence tends to prove is probably not now obtainable on the market.

The upset price is an expedient resorted to during many years in the federal courts in foreclosure sales for reorganizations of railroad corporations, and in this country its use except under statutes seems to have been confined to these reorganizations. The sales have not been treated as sales in reality, because railroad properties are not salable; the foreclosures have been regarded merely as steps in reconstruction of the financial constitutions of the corporations, and the upset price has been in the nature of a restraint on following the theory or fiction of sale completely. Unrestrained, the majority bondholders would be enabled to eliminate dissenting bondholders and other lienors by buying in at a low price, because they alone can take the position of buyer; they own the greater part of the proceeds of any bid they may make, and the minority, and other lienors, cannot ordinarily compete in the bidding as they must bid new money. The upset prices have afforded protection against this, and, at the same time, have provided valuations for paying off in money the shares of the dissenting bondholders and others. In more recent years the same purposes have been subserved by decreeing that sale shall be subject to approval or disapproval by the court, without restriction by the rule of ordinary sales, that mere inadequacy of price will not be sufficient to set them aside. *Louisville Trust Co. v. Louisville, N. A. & C. R. Co.,* 174 U. S. 674, 683, 19 S. Ct. 827, 43 L. Ed. 1130; 26 *Illinois Law Review,* 325; 27 *Columbia Law Review,* 132.

Real estate is ordinarily salable and divisible, and the rights of co-owners have not been regarded so much as rights

of a group with mutual obligations, but more as separate, absolute rights, including the right of withdrawal, and of severance for the purpose, by such means as may be feasible, notwithstanding any injury or hardship that the exercise of that right might bring upon others of the co-owners. But there are similarities between the positions of majority bond-holders of railroad properties and the majority of co-owners of real estate, and the conditions permanently true in reorganization and foreclosure sales of railroads, which have caused the adoption of the upset price, may become true at times when co-owners of real estate move to sell for division. Here, too, by reason of the existence of a low market, or absence of any market at all, ownership by a majority interest of most of the proceeds of sale, and inability of the minority interest to bid and buy to protect itself, the majority may be afforded an opportunity to eliminate the minority at small cost. The trial court in this case considered that these conditions would exist at the time of the sale prayed. Testimony showed absence of a general market and ownership by the complainants of the majority interest, but the record does not show whether or not the defendants are able to protect themselves. Assuming that they are not, should a court undertake to restrict and adapt the proceeding to these circumstances by imposition of the upset price?

It is not the part of a court to adopt a moratorium, dispensing with the law, or altering it, for a time. Its action must be general, and, in the absence of a statutory provision to the contrary, must be the same for the same conditions whenever found; and the question must take in these essential conditions without restriction to time. They are conditions that may exist at other times as well as now, and, if the minority should have the protection of an upset price in this case, then a minority should have it when in any later case it might happen that owners of a majority interest in property held in common would, upon assertion of their right to a sale, be placed in a position to buy in at a price which evidence might show to be below that obtainable at

another time. This would render the right to sale and division always subject to determination of some facts. It would seem always relevant in a proceeding under the statute for the defendants to contest the condition of the market, the fair value of the property, the ability of the defendants to protect themselves by bidding, and possibly a need of the complainants for sale to be weighed against disadvantage to the defendants. This would amount to a considerable amendment and addition to the broad terms of the statute as heretofore understood; and it would involve a departure from the previous conception that any one co-owner has an absolute right to sale and severance even to the injury of other co-owners. This court is of opinion that it should not be done by judicial action, permanently or temporarily, that except where the ordinary rights and the remedy in partition proceedings may be altered by statute, they must be allowed by the courts upon a showing of the facts and circumstances on the existence of which they have been made to depend regularly, and that the upset price is not to be added.

A question has arisen of the right of the complainants to appeal before the possibility of detriment to them from the restriction of sale has been realized by failure to make sale at a price as high as the minimum specified. If the property should bring that price, their objection would, of course, be left without point. The decree is final in its determination of the right sought to be exercised, the determination is one which the complainants are entitled to have reviewed, and it is on an appeal from the decree only that the objection now urged could be raised. If, in accordance with that decree, the property is offered at $40,000 or more and fails to bring that price, as predicted, the restriction would not afford ground for appeal as of that time, the subject of the appeal could be found only in the decree, and from that the appeal must be prosecuted in two months. The appeal seems to be timely.

*Decree reversed, and cause remanded for further proceedings, with costs.*