## WILLIAM F. BRACK *v.* UNION TRUST COMPANY ET AL.

[No. 17, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*David Ash*, with who was *Robert E. Kanode* on the brief, for the appellant.

*Niles, Barton, Morrow & Yost*, submitting on brief, for the Union Trust Company of Maryland and William G. Dancy, Trustees, appellees.

*Walter L. Clarke* and *Roszel C. Thomsen*, with whom was *Edwin W. Lowe* on the brief, for the Continental Investment Bond Corporation and the Continental Investment Debenture Corporation, appellees.

URNER, J., delivered the opinion of the Court.

Under a trust indenture, dated September 1st, 1926, the Continental Bond & Investment Company transferred to the Union Trust Company of Maryland, as trustee, certain mortgages and cash, as security for a series of bonds issued by the first named corporation, each of the assigned mortgages being guaranteed as to the payment of principal and interest by the Maryland Casualty Company. By an amending agreement, dated October 28th, 1930, Francis B. Weirs (later succeeded by William G. Dancy), was appointed a cotrustee with the Union Trust Company for the purposes of the trust created by the original indenture. On May 24th, 1934, the Circuit Court No. 2 of Baltimore City assumed jurisdiction of the trust upon a bill of complaint filed by the trustees. Included in the bill were allegations which may thus be summarized: Bonds in five series had been issued and were then outstanding under the trust agreement, as follows: Series A, $69,700; Series B, $96,000; Series C, $105,500; Series D, $79,500; Series E, $98,500. By the terms of the trust agreement the bonds of each series and the collateral pledged therefor were to be considered a distinct unit. The assets pledged for the respective series of bonds were as follows: For Series A, $60,424.89 in mortgages and $10,186.69 in cash; for Series B, $83,211.66 in mortgages

and $14,179.43 in cash; for Series C, $79,901.28 in mortgages and $30,513.65 in cash; for Series D, $77,846.47 in mortgages and $14,146.45 in cash; and for Series E, $81,457.34 in mortgages and $20,268.26 in cash. In June, 1933, the Continental Bond & Investment Company, at the instance of the Maryland Casualty Company, guarantor of the mortgages pledged with the trustees, proposed to the holders of Series A, B, C, D, and E bonds thereby secured a Refunding Plan, which provided for the surrender of the bonds for cancellation and for the acceptance, in substitution for those obligations, of cash and debentures of a new corporation to be formed, or of bonds of a new corporation, to be secured by the existing bonds of Series A, B, C, D, and E, or by the collateral then pledged for their payment. At the time of this proposal to the holders of Continental Bond & Investment Company bonds, a like proposal was made to the holders of other mortgage company bonds secured by mortgages guaranteed by the Maryland Casualty Company. The holders of approximately seventy per cent. of Series A, B, C, D, and E bonds of the Continental Bond & Investment Company accepted the proposal and deposited their bonds with the Maryland Casualty Company as depositary in accordance with the terms of their acceptance. The complainants are also trustees under other indentures dated March 15th, 1932, securing issues of mortgage bonds of the Continental Bond & Investment Company designated as Series F and G. Under each trust the collateral assets consist principally of mortgages bearing the guarantee of the Maryland Casualty Company as to the payment of principal and interest. The Continental Bond & Investment Company did not pay the interest on its outstanding bonds which became due on September 15th, 1933, and has not paid any interest accruing thereon since that date. Shortly after September 15th, 1933, because of failure by the Continental Bond & Investment Company to pay interest then due on its bonds, the complainant trustees notified the Maryland Casualty Company of such default, and took charge of the collection of the

mortgages included in the trust property held as security for the bonds of all the series to which the bill of complaint refers. The assumption by the court of jurisdiction over the trust was alleged by the trustees to be advisable because of questions which would inevitably arise as to rights and duties of the trustees, and of the Continental Bond & Investment Company and the Maryland Casualty Company, and of the bondholders who have not deposited their bonds in acceptance of the Refunding Plan, and of the present holders of the bonds which have been so deposited, and because of questions which would arise in the event of a request that the trustees proceed to foreclose the trust or take other action in regard to the trust property in consequence of the deposit of bonds in acceptance of the Refunding Plan.

In separate proceedings Circuit Court No. 2 assumed jurisdiction of the trusts under the two indentures of March 15th, 1932, relating to Series F and G bonds, and, by its order of August 8th, 1934, all three of the proceedings were consolidated.

The Refunding Plan was concerned not only with the bonds of the Continental Bond & Investment Company, but with all other mortgage company bonds supported by securities for which the Maryland Casualty Company was guarantor. The total amount of the liabilities which it had assumed in that capacity was approximately $50,000-000. Its obligations related to mortgages on thousands of properties in various states. Because of defaults under the mortgages and the bonds they were intended to secure, the Maryland Casualty Company was subjected to a drain upon its resources which made some form of refinancing imperative in order that the value of its guaranty might be sustained for the benefit of the mortgage companies' bondholders. By the Refunding Plan they were offered two options. The first entitled them to exchange their bonds for an equal amount of bonds to be issued by a new corporation, to mature in twenty years, to bear interest graduated from two per cent. to four per cent. and to be guaranteed by the Maryland Casualty Company as

to principal and interest. Under the second option a bondholder had the right to receive $300 in cash for each $1,000 bond and a debenture issued by a new corporation for the remaining $700, to mature in twenty years, to bear interest graduated from two per cent. to six per cent. and to be guaranteed by the Maryland Casualty Company as to interest but not as to principal. A large majority of the holders of bonds issued by the Continental Bond & Investment Company accepted one or the other of the two options thus offered. The new corporation formed to accomplish the objects of Option No. 1 as to bonds of that company was given the name of the Continental Investment Bond Corporation, and the one organized to serve the purposes of Option No. 2 as to those bonds is the Continental Investment Debenture Corporation. The bonds acquired by the first named of the new corporations, as the result of the exchange of bonds under Option No. 1, were deposited by it with the trustees under a trust indenture as collateral securing the new bonds issued under that option. A different disposition was made of the bonds similarly acquired by the Continental Investment Debenture Corporation. They were pledged, with the consent of the depositing bondholders, to the Reconstruction Finance Corporation for a loan of $330 per $1,000 bond, and the proceeds of the loan were used to pay $300 in cash and accrued interest to the depositors of bonds under Option No. 2. The Reconstruction Finance Corporation advanced a total of $12,000,000 for such purposes, and for expenses under the general refinancing project. It also rehabilitated the Maryland Casualty Company by the purchase of new issues of the preferred stock of that company to the amount of $17,500,000.

In the trust indentures under which the bonds and debentures, respectively, of the Continental Investment Bond Corporation and the Continental Investment Debenture Corporation were issued, in exchange for the bonds deposited with them under the options, it was stated that the bonds were so delivered and received in pursuance of the Refunding Plan described in the deposit agreement,

and it was provided that all bonds pledged as collateral under the indentures should be held and applied or exchanged in the same manner and for the same purpose, "it being contemplated and intended that as soon as practicable collateral securing the exchanged bonds which may be pledged under the indentures shall be substituted as collateral for any and all exchanged bonds so pledged," and that all rights which the corporation or the trustee might have as holders of the bonds should be exercised for the purpose of procuring or effecting such substitution by the cancellation of the exchanged bonds and withdrawal of an appropriate amount and kind of collateral "through foreclosure or in any other lawful manner."

Defaults having occurred, as defined in the trust indenture of September 1st, 1926, with respect to the bonds of each series issued under its terms, the trustees under the indentures of the Continental Investment Bond Corporation and the Continental Investment Debenture Corporation, together with those corporations, requested the trustees under the first mentioned indenture to take the following action in pursuance of its provisions: "For the purposes of settling all claims related to the trust estate, to sell, at public sale, all of the trust property (except cash and the individual guarantee bonds executed by Continental Bond and Investment Company as principal and Maryland Casualty Company as surety) securing the bonds of each series in separate blocks, each block to consist of all the trust property, (except cash and said individual guarantee bonds) pledged as collateral for each separate series of bonds; each said sale to be made to the highest and best bidder for each block, even though the amount of the bid is less than the principal amount of the trust property so sold, and each such sale to be conducted at such time and place and upon such terms as said trustees may determine."

That request was recited in a petition filed by the Continental Investment Bond Corporation and the Continental Investment Debenture Corporation in the proceedings in which jurisdiction had been assumed by Circuit Court No.

2 over the corporations created by the indentures of September 1st, 1926, and March 15th, 1932. The petition stated the pertinent facts to which we have referred, and it prayed for a decree authorizing the trustees under the original indenture to sell, in the manner proposed in the petition, the trust property securing the bonds under that indenture, and after confirmation of the sale to distribute the proceeds in accordance with its provisions.

On March 26th, 1936, the court decreed that Union Trust Company, as corporate trustee under the trust indenture of September 1st, 1926, sell at public auction, at the Real Estate Board Rooms, No. 7 St. Paul Street, Baltimore, Md., all of the trust property (except cash and the guarantee bonds executed by Maryland Casualty Company) held by the trustee under the indenture as collateral respectively for Series A, B, C, D, and E bonds of the Continental Bond & Investment Company; that the collateral for the bonds of each series be sold as a single unit; that notice of the time, place, manner, and terms of sale, describing briefly the kind of property offered for sale, be published at least once a week for three successive weeks prior to the date of sale in the Daily Record; that no bid be received from any bidder who had not deposited with the corporate trustee at least twenty-four hours before the time appointed for the sale, as a pledge of compliance with his bid if accepted, for the collateral securing a particular series of bonds, the sum of $5,000 in cash or certified check, or $10,000 in principal amount of outstanding bonds of that series.

The public auction authorized by the decree was held on April 20th, 1936. It resulted in the sale of all of the advertised collateral to Charles S. Lerch, a representative of the Continental Investment Bond Corporation and the Continental Investment Debenture Corporation. The trustee's report of the sale stated that it had been duly advertised as required by the decree, and that the purchaser had previously made deposits as therein prescribed to qualify him as a bidder. A separate offer and sale was reported as to each lot of collateral described in the adver-

tisement as securing a particular serial bond issue. In each instance the price of the bid accepted was stated to be the highest and best offer received at the sale, but it was less than the face value of the bonds which the collateral was intended to secure.

The owner of three $1,000 bonds of Series C excepted to the ratification of the trustee's sale of the collateral allocated to that series of obligations. Specifically it was objected: (1) That no adequate description of the collateral security to be sold was given in the advertisement of sale. (2) That the sale was not fairly conducted, in that the collateral securing Series C bonds was offered and sold as a whole instead of being offered in "individual units." (3) That the terms of sale had the practical effect of excluding all bidders except the Maryland Casualty Company or its subsidiaries. (4) That the price obtained for the collateral was wholly inadequate. (5) That the sale was not competitive. Supplemental exceptions filed by the same bondholder alleged that the terms and conditions precedent upon which the sale was advertised to be made were not complied with, but were varied, and that the report of sale did not affirmatively show compliance by the successful bidder with the terms and conditions prescribed.. The exceptant also filed objections to the Refunding Plan, but they were abandoned at the hearing on the exceptions to the sale. At the conclusion of that hearing, the sale was ratified by the court. The order of ratification was filed on June 24th, 1936. It stated that the sale of the collateral for each series of bonds was made to a bidder who had duly qualified under the decree of sale and for a price "adequate and equitable to all bondholders alike," and that "the provisions of the Refunding Plan sponsored by Maryland Casualty Company and its affiliated organizations, including the provisions for the sale of the mortgages, claims and other trust assets and for the issuance and exchange of new securities of Continental Investment Bond Corporation and Continental Investment Debenture Corporation for bonds issued under the said Indenture of Trust are fair and.

equitable," and that the reported sale was advisable in order to consummate the Refunding Plan and liquidate the trust.

On August 11th, 1936, the Union Trust Company, trustee, reported to the court that, pursuant to the order of ratification passed June 24th, 1936, the collateral described in the report of sale had been transferred on August 4th, 1936, in conformity and upon compliance with the specified terms and conditions of purchase. This appeal by the exceptant to the sale was entered on August 18th, 1936. The effect of the order ratifying the sale had not been stayed either by direction of the court or by the filing of a bond under Code, art. 5, sec. 33.

There is a motion by the appellees that the appeal be dismissed. The ground of the motion is that the sale having been fully consummated by the payment of the purchase price and the transfer of the property, in accordance with the unstayed order of ratification, the validity and finality of the transaction would not be affected by any appellate decision of the questions presented on this record. While that view is correct, its adoption does not require a dismissal of the appeal. In *Shirk v. Soper,* 144 Md. 269, 124 A. 911, where the subject was thoroughly discussed, and earlier cases reviewed, the order ratifying the sale there in question was reversed, although it was held that the reversal could not impair the rights of the purchaser in the absence of an approved bond staying the effect of the order of ratification while the appeal was pending. Under the different conditions presented in *Bowles v. Moller, Inc.,* 163 Md. 670, 164 A. 665, the appeal was dismissed. But the ruling of the lower court in that case on the litigated question of insolvency was approved. This case is more nearly analogous to *Shirk v. Soper, supra,* in regard to the situation of the appellant, and we shall therefore overrule the motion to dismiss the appeal, and shall decide the questions which it presents.

The advertisement of sale here contested by the appellant stated that the trust assets to be offered for sale consisted principally of notes secured by mortgages, deeds

of trust or instruments of like legal effect on improved real estate, "which assets are more fully described in Exhibit three attached to and made a part of the trustees' petition filed in this cause on March 26th, 1936." The aggregate principal amount of the trust assets separately securing the bonds of each series was stated in the advertisement, as was the proposal to sell as distinct units the various groups of assets thus segregated. This was in exact conformity with the direction of the decree under which the sale was to be conducted. There were hundreds of mortgages and other instruments included in the collateral for the five series of bonds; and a description of them by reference to the list filed as an exhibit in court, rather than by a detailed and cumbersome enumeration in the advertisement, would seem to have been sufficient for the purposes of that publication in regard to such a sale as the one to which it was directed. There is no suggestion that the collateral securities offered for sale were not adequately described in the filed exhibit which prospective purchasers had ample opportunity to examine.

With respect to the objection that the collateral for each series of bonds was offered as a whole and not as separate securities, we need only say that such a method of disposition was required by the decree of sale, that the present appellant was a party to the proceeding when the decree was passed, and that there was no appeal from it by him or any other bondholder. *Slingluff v. Stanley,* 66 Md. 220, 7 A. 261; *Wickes v. Wickes,* 98 Md. 307, 56 A. 1017; *Kemp v. Waters,* 165 Md. 521, 170 A. 178; *Northrop v. Beale,* 170 Md. 439, 446, 184 A. 900.

The third ground of exception assumes that the Maryland Casualty Company, or its subsidiaries, purchased the collateral securing the series of bonds in which those of the appellant were included. The purchaser was a representative of the two new corporations by which many of the bonds secured by the collateral held under the trust indenture of September 1st, 1926, had been acquired under the Refunding Plan. It was not an unreasonable provision in the decree that such bonds could be used by the

holders in payment for collateral which they might buy at the sale. *Spedden v. Balto. Refrigerating etc. Co.,* 117 Md. 443, 84 A. 150; *Ketchum v. Duncan,* 96 U. S. 659, 24 L. Ed. 868. That was a privilege available to the appellant as a bondholder, and the fact that a large proportion of the bonds of the same series was held by the actual purchasers is not a reason for regarding the terms of sale as objectionable.

No evidence was offered to prove that the price realized at the sale was inadequate, or that it was less than the actual value of the assets sold.

The objection that the sale was not competitive appears from the appellant's brief to be based upon the theory that bidding was unduly restricted by the requirement of previous deposits of cash or bonds by those intending to bid at the auction. As that was a provision of the unappealed decree, it would not be a proper ground of exception to the sale, even if its propriety could otherwise be doubted.

There is no support in the record for the allegation in the supplemental exception that the advertised terms and conditions for the sale were varied, and the report of sale definitely contradicts the assertion that the successful bidder is not reported to have complied with the conditions upon which his right to compete at the sale depended.

It is contended by the appellant that the decree for the sale should be invalidated on jurisdictional grounds. If the court below was wholly without jurisdiction to pass the decree, there could be no doubt that the appellant would be entitled to urge that objection, as against the ratification of the sale, notwithstanding his omission to raise, by direct appeal from the decree, any question as to its validity. *Slingluff v. Stanley,* 66 Md. 220, 7 A. 261; *Scarlett v. Robinson,* 112 Md. 202, 76 A. 181. But in our opinion the decree in this case was passed in the exercise of ample judicial authority. The purpose of the proceeding was to procure the court's supervision over the further administration of a trust. The trustees had a right to

invoke, and the court was competent to assume, jurisdiction for such a purpose. *Preston v. Safe Deposit & Trust Co.,* 116 Md. 211, 81 A. 523; *Diggs v. Fidelity & Deposit Co.,* 112 Md. 50, 75 A. 517. Questions raised by the appellant as to his right, under certain terms of the trust, to have the administration of the trust, and the lien of the indenture, continue for his benefit, and to defeat a sale for less than the face value of the mortgage collateral, are concerned with the proper exercise, and not with the valid existence, of the court's jurisdiction. The decree for the sale determined that a disposition of the collateral under the prescribed conditions was proper and necessary for the protection of the interests which the trust involved. The dissatisfaction of the appellant with that determination could have been manifested by an appeal from the decree, but he is not entitled, on his exceptions to the sale, to contest the decree on the ground that it is jurisdictionally void. If we could review the decree on this appeal by the only complaining bondholder, we should affirm it as a judicious exercise of the lower court's equitable power to serve the essential purposes of the trust, under the urgent conditions then existing, and thereby permit the fulfillment of a Refunding Plan by which the interests of all the bondholders would presumably be promoted. The decree and order ratifying the sale have not restricted the appellant's right to participate in the benefits which the Refunding Plan was intended to secure, and he, of course, has the alternative right to receive his due proportion of the fund which the reported sale produced.

*Motion to dismiss overruled.*
*Order affirmed, with costs.*